**Patsy Denise GARDNER, by her next friend, Alma GARDNER, and Alma Gardner, on her own behalf, Appellants,**

v.

**Norma PARSON, Charles Hayward, John Rago, Dorothy F. Loftus, David Desmond, Carol Canfield, Susan Hayes Graham, Carol Harvey, William Ray Johnson, Queen Esther Gardner, Patricia Levins, Dr. David W. Hung, Susan DeGraff, Janet Cattone, Barbara A. Brown, Elizabeth M. Von Frankenberg, Vivian B. Young, Betty Montgomery, Lillian Cobin, Karen Doherty, Henry Stroud, Shirley Cupery, Carolyn S. Klein, Jane Erisman, Jane Bullen, Annie B. King, Janet H. Waddell and Barbara Herr.**

No. 88–3568.

United States Court of Appeals,
Third Circuit.

Argued Jan. 10, 1989.

Decided May 3, 1989.

---

Keith R. Sattesahn (argued), Robert L. Ciociola, Skadden, Arps, Meagher, Slate & Flomm, Wilmington, Del., for appellants.

Gregg E. Wilson (argued), Janice R. Tigani, Dept. of Justice, Wilmington, Del., for appellees Norma Parson, Charles Hayward, John Rago, Dorothy F. Loftus, David Desmond, Carol Canfield, Susan Hayes Graham, Carol Harvey, William Ray Johnson, Patricia Levins, Barbara A. Brown, Elizabeth M. Von Frankenberg, Vivian B. Young, Betty Montgomery, Lillian Cobin, Karen Doherty, Henry Stroud, Shirley Cupery, Carolyn S. Klein, Jane Erisman, Jane Bullen, Annie B. King, Janet H. Waddell and Barbara Herr.

David H. Williams, Morris, James, Hitchens & Williams, Wilmington, Del., for appellees David W. Hung, Susan DeGraff, and Janet Cattone.

Before HIGGINBOTHAM, COWEN and ALDISERT Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

On August 5, 1987, Alma Gardner ("Alma"), individually and as next friend for her granddaughter Patsy Gardner, a minor ("Patsy"), filed an action under 42 U.S.C. § 1983 in the United States District Court for the District of Delaware. The complaint named numerous parties as defendants in connection with alleged constitutional violations arising from their care of Patsy, a severely mentally retarded teenager. On July 26, 1988, the district court entered an order removing Alma as Patsy's next friend and refusing to appoint a replacement, and dismissing Patsy's claims. The court also granted Defendants' motions for summary judgment as to Alma's individual claims. This appeal followed.

We affirm the district court's dismissal of Alma as next friend. We determine, however, that the district court abused its discretion in failing to appoint a new next friend, and in dismissing Patsy's claims. Therefore, we will reverse and remand with instructions to the district court to appoint a next friend to prosecute Patsy's claims. We also affirm the court's grant of summary judgment in favor of Defendants on Alma's individual claims.

### I.

This appeal is the latest, but not the final, chapter in a series of hearings, trials and appeals in state and federal courts. This case deeply disturbs us, because a handicapped child has been the subject of seemingly endless litigation, which has prevented her from receiving on a consistent basis the special family, educational, and medical services which she requires. The child's predicament has been exacerbated by a troubled family situation and inadequate performance by state social service personnel.

A review of the extensive procedural history is necessary for a proper understanding of this case. Patsy Gardner was born on March 13, 1974, and has been mentally retarded since birth.[1] As an infant Patsy resided with her mother, Patricia Gardner, in Wilmington, Delaware. The Delaware Division of Social Services ("DSS") was alerted that Patsy was not

---

1. Although no definitive diagnosis of Patsy appears to have been made, Patsy has been diagnosed at various times as being mentally retarded, autistic, and schizophrenic.

being adequately cared for by her mother, and, pursuant to a hearing on March 25, 1977, the family court awarded temporary custody of Patsy to DSS. After a more extensive hearing on May 17, 1977, at which the family court found that Patricia had neglected Patsy as to both basic and special needs and had failed to cooperate with DSS, the court retained temporary custody of Patsy in DSS and ordered that Patsy be placed with Alma.[2] The court also ordered that Patricia be committed to the Delaware State Hospital for evaluation. App. at 284–85.[3]

In late 1981, DSS learned that Patsy's behavioral problems were becoming unmanageable. The DSS social worker assigned to Patsy petitioned the family court for a hearing to show cause as to why Patsy should not be placed temporarily at the Terry Children's Psychiatric Center for evaluation. The court found that Patsy's behavior suggested a need for an in-depth evaluation, that Alma had been medicating Patsy without a prescription, and that Patricia, Patsy's mother, was presently living with Alma. Based on this, the court ordered an immediate placement at the Terry Center for evaluation and diagnosis not to exceed 90 days. After three weeks of testing Patsy was returned to Alma. App. at 285–87.

On June 4, 1982, Alma Gardner, proceeding *pro se*, filed a complaint in the United States District Court for the District of Delaware alleging that the DSS social worker violated several constitutional and statutory provisions during the custody dispute. Alma also sought custody of the child. In a memorandum opinion and order issued December 6, 1982, the district court found that the social worker had not acted improperly and held that Alma did not allege facts establishing a federal constitutional or statutory violation.[4] The court also held that it lacked jurisdiction over the custody claim. App. at 287–89. The instant suit, except for obvious factual similarities, is not related to this earlier federal suit.

Beginning in December 1982, Alma kept Patsy home from school because of continuing respiratory problems for which Patsy had been medically excused through January 1983. On March 1, 1983, when Patsy had not yet returned to school, the Division of Child Protective Services ("DCPS")[5] filed in Delaware family court a "Dependency/Neglect" Petition for Protective Supervision, pursuant to Del.Code Ann. tit. 10, § 937 (1975 & Supp.1988).[6] Pursuant to a hearing, on May 25, 1983 the family court issued an opinion and order which, while not finding Patsy dependent or neglected, stated that: DCPS shall have

---

**2.** Legal custody of Patsy has remained with the agency from 1977 to the present time. App. at 331.

**3.** The family court found that Patricia was mentally unstable and unable to properly care for Patsy. App. at 324. Patricia was released from the Delaware State Hospital on September 12, 1977, *id.,* and she is not involved in the present appeal.

**4.** Specifically, Alma denied that she had given Patsy drugs, claiming that Patsy's behavioral problems were caused by the treatment she received at school. She also alleged that Patsy was harassed by her teachers and tied to her seat on the school bus. She further alleged that the social worker was not justified in removing Patsy for temporary placement at the Terry Center. App. at 287.

**5.** The Division of Child Protective Services is the successor agency to Delaware Social Services ("DSS"). App. at 293.

**6.** Del.Code Ann. tit. 10, § 937 (Supp.1988) provides that "[w]here the evidence supports such

holding, the Court may declare a child to be dependent, neglected, or delinquent."

A "Dependent child" is a child "whose physical, mental or emotional health and well-being is threatened or impaired because of inadequate care and protection by the child's custodian, who is unable to provide adequate care for the child...." Del.Code Ann. tit. 10, § 901(8) (Supp.1988).

A "Neglected child" is a child "whose physical, mental or emotional health and well-being is threatened or impaired because of inadequate care and protection by the child's custodian, who has the ability and financial means to provide for the care but does not or will not provide adequate care...." Del.Code Ann. tit. 10, § 901(11) (Supp.1988).

"Adequate care" is "a type and degree of personalized attention that will tend to advance a child's physical, mental, moral, emotional, and general well-being." Del.Code Ann. tit. 10, § 901(1) (1975).

continued legal custody of Patsy; Patsy's placement with Alma may be terminated by DCPS at any time without further court order; and DCPS may permit continued placement with Alma if Alma ensures that Patsy attends school regularly, participates in the school program, submits to monitoring by school officials of any medications prescribed for Patsy, and agrees to undergo psychiatric examination. App. at 297–98.

After Alma presented a medical excuse for her previously unexplained absence from the May 25, 1983 hearing, the family court held another hearing on July 27, 1983. After the second hearing, the court announced that its May 25 order would stand. On July 28, the court issued an order denying Alma's petition for sole custody, awarding sole custody to DCPS, ordering DCPS to arrange a new placement for Patsy with arrangements for Alma to visit Patsy, and directing Alma not to interfere with Patsy's removal and new placement. In August 1983, Patsy was placed with Esther Gardner. App. at 300–01.[7]

Alma appealed the family court decision. The Delaware Superior Court initially affirmed the decision, but the Delaware Supreme Court remanded the case to the Superior Court for further consideration. On April 30, 1985 the Superior Court issued an opinion concluding that Alma had a liberty interest in the continuation of her familial relationship with her grandchild, that this interest is entitled to procedural due process protection, and that the family court proceedings violated due process. Thus, the case was remanded to the family court for a hearing upon certain issues. App. at 291–319.[8]

On November 26, 1986, after eleven days of trial, the family court issued its opinion. App. at 320–47. The superior court, in its remand instruction, had ordered the family

court to afford Alma: a fair hearing upon the DCPS' dependency/neglect petition and an opportunity to cross-examine DCPS' witnesses; a hearing at which to present her custody petition; and notice that DCPS proposed to remove Patsy from Alma's care and place her in a foster home. App. at 316. The family court found Patsy to be a "dependent and/or neglected child", within the meaning of Del.Code Ann. tit. 10, §§ 901(8) and (11) (Supp.1988), because her physical, mental and emotional well-being were threatened or impaired. App. at 334–35, 347. Thus, the court issued an order denying Alma's petition for custody of Patsy, and directing that DCPS retain temporary custody of Patsy. App. at 347. This decision was affirmed by the superior court on May 21, 1987, app. at 348–53, and by the Supreme Court on March 2, 1988, 539 A.2d 193.

On August 5, 1987, Alma, individually and as next friend of Patsy, filed the instant action in the United States District Court for the District of Delaware under 42 U.S.C. § 1983, and a number of other federal and state statutory and constitutional provisions. The complaint named as defendants numerous DCPS administrators, school officials, social workers, and others involved in Patsy's case ("Defendants" or "Appellees"), and it alleged constitutional violations arising from the Defendants' care of Patsy. On July 8, 1988, the district court heard arguments and made bench rulings on Defendants' motions for summary judgment. On July 26, 1988, the district court entered an order removing Alma as Patsy's next friend and refusing to appoint a replacement, and effectively dismissing, pursuant to Fed.R.Civ.P. 17(c), the claims asserted by Alma on behalf of Patsy. The court also granted Defendants' motions for summary judgment as to Alma's individual claims. App. at 210–11. Alma filed a notice of appeal on August 25, 1988.

---

7. Esther Gardner is the foster parent selected by DCPS and is also Alma Gardner's former daughter-in-law. The record indicates that Patsy's placement with Esther Gardner apparently was terminated in May 1987 because another suitable foster home was located and Esther had requested Patsy's removal so that she could take in another boarder. App. at 704–09.

8. By the time of the remand to the superior court, Alma had secured counsel and was no longer proceeding pro se. See App. at 291. The same counsel has remained on this matter through this appeal.

## II.

In this section of the opinion we will discuss Patsy's claims, and in the following section we will discuss Alma's individual claims. Regarding Alma's ability to act as "next friend" and sue on behalf of Patsy, the district court stated in its order:

2. Defendants' motions to dismiss the claims asserted on behalf of Patsy Gardner by Alma Gardner as next friend of Patsy Gardner are granted because it is apparent from the record that Alma Gardner does not have standing under Fed.R.Civ.P. 17(c) to present these claims on behalf of Patsy Gardner.

3. In view of the finding by the Court that plaintiffs have brought this suit in an attempt to make a collateral attack on the issues litigated in the Delaware State Courts, the Court will not appoint a replacement for Alma Gardner as "next friend" for Patsy Gardner.

. . . .

6. Plaintiffs' motion to amend the Complaint on the question of Alma Gardner's standing to be "next friend" and to request a hearing on the issue of whether Alma Gardner is an appropriate representative for Patsy Gardner in a suit for money damages is denied on the basis of the findings of the Family Court of the State of Delaware, as affirmed by the Delaware Superior Court and the Delaware Supreme Court, in its decision to deny Alma Gardner's petition for custody of Patsy Gardner.

App. at 210–11.

After determining that Alma had no "standing" to act as Patsy's next friend,

the court refused to appoint another next friend and dismissed Patsy's claims.[9] The court relied on Fed.R.Civ.P. 17(c), which reads:

(c) Infants or Incompetent Persons

Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

## A.

■ We must first determine whether Patsy had a duly appointed representative to bring suit on her behalf. There is some confusion on this issue. We note that a guardian ad litem appeared in the 1982 federal lawsuit, app. at 286, in the 1983 family court proceeding on the DCPS's dependency/neglect petition, app. at 296, and in the 1986 family court proceeding in which the court reheard the petition on remand, app. at 320. However, the parties dispute whether Patsy has a representative in the instant suit.[10]

The district court noted that Patsy has been in the temporary legal custody of the

---

9. Although the court and the parties have used the term "standing," we will avoid using "that slippery and indefinite term", *Lehman v. Lycoming County Children's Servs. Agency,* 648 F.2d 135, 174 (3d Cir.1981) (in banc) (Gibbons, J., dissenting), *aff'd,* 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), because in this instance it is inapt. The issue here is the capacity to sue as representative of an incompetent. We state this at the outset so as to avoid confusion with Article III standing, which requires allegation of some injury to support a "case or controversy," and which is not implicated here. Article III standing is discussed, however, in the following section of this opinion dealing with Alma's individual claims.

10. In precise legal terms, a minor or incompetent plaintiff sues by a "next friend," while a minor or incompetent defendant defends by a "guardian ad litem." But the duties and powers of a representative in litigation are identical, regardless of which title applies. *Dacanay v. Mendoza,* 573 F.2d 1075, 1076 n. 1 (9th Cir. 1978). Moreover, any difference between a "next friend" and a "guardian ad litem" is primarily historical. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1572 (1971).

In this opinion we will generally use the term "next friend," as Patsy is a *plaintiff* in this action, and the parties and the district court have applied this term.

DCPS, but that the DCPS has not been designated as her next friend in this suit. App. at 270. The court also noted that "[t]here is no 'duly appointed representative' appearing on behalf of Patsy in this suit." *Id.* However, Defendants, in their Opening Brief in support of their motions for summary judgment below, contradicted the district court's statement that Patsy had no representative. Defendants stated: "In this case, a duly appointed representative was named by the Family Court of the State of Delaware to be the 'Guardian ad Litem.' [Thus] Alma Gardner did not have standing to file this suit on behalf of Patsy Gardner." Record Doc. No. 38 at 23. Likewise, the Smith Defendants,[11] in their Brief in support of their motion for summary judgment, state in one heading: "ALMA LACKS STANDING TO SUE AS PATSY'S NEXT FRIEND BECAUSE PATSY HAS A DULY APPOINTED REPRESENTATIVE". That Brief adopts by reference the arguments on this issue contained in the Defendants' Brief, referred to above. Record Doc. No. 36 at 9.

Apparently Defendants' position is that Patsy's Court Appointed Special Advocate ("CASA"), Patricia Levins—who is a defendant in this case—is her representative for purposes of Rule 17(c) capacity to bring suit. Plaintiffs respond, first, that neither the statute providing for CASAs nor the state court order appointing Ms. Levins gives her the authority to bring suit, but instead is limited to participation in certain proceedings initiated in state family court. Plaintiffs also argue that, even if Ms. Levins *had* authority to represent Patsy in federal court, her "conflicts of interest and her refusal to act in this case surely prevent her from adequately representing Patsy." Plaintiff's Answering Brief, Record Document No. 42 at 28.

■ Because we agree with Plaintiffs that Ms. Levins has a conflict of interest, we hold that she is not a proper representa-

tive of Patsy in this suit, even if she were empowered to sue in federal court by Delaware law. Therefore, we need not reach the issue of whether a CASA appointed by a Delaware family court may act as a representative in federal suit. Ms. Levins has a conflict of interest due simply to the fact that she is a defendant in the lawsuit, and thus her interests conflict with those of Patsy.

In the case of *M.S. v. Wermers,* 557 F.2d 170 (8th Cir.1977), a minor plaintiff sought a declaratory judgment as to the constitutionality of the policy of a county family planning clinic to deny contraceptive services or supplies to minors who lacked parental consent to receive such services. The court held that, given the plaintiff's belief that her parents would not consent to her receiving contraceptives, it was inappropriate to appoint the parents as guardians ad litem for the plaintiff in litigation challenging this grant of parental veto power. The court stated that "[w]hen there is a potential conflict between a perceived parental responsibility and an obligation to assist the court in achieving a just and speedy determination of the action, parents have no right to act as guardians ad litem." 557 F.2d at 175. We think that the instant case presents an even stronger conflict than in *Wermers,* because Patsy and Ms. Levins are actually named adversaries in the litigation. Thus, their interests are both practically and legally opposite.

Because Ms. Levins had a conflict, she could not represent Patsy, and another next friend was required. *See* 3A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 17.26 (2d ed. 1987) ("[I]f the representative is unable or refuses to act or his interests conflict with the person represented, the infant or incompetent may sue in federal court by his next friend or by a guardian ad litem."); *see also* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1570 (1971) ("if the infant or

---

11. Defendants David W. Hung, Susan DeGraff, and Janet Cattone have been named as defendants because of their contacts with Patsy arising out of their employment by the Jennie Smith School, which Patsy attended. The three are being represented separately from the re-

maining defendants and, when referred to specifically, will be called the "Smith Defendants". Unless we specify otherwise, we include the Smith Defendants whenever we refer in this opinion to "Defendants" or "Appellees".

incompetent has a general representative who refuses to act or his own interests conflict with those of the person he is supposed to represent ... [c]ourts, both state and federal, always have had the power to appoint special representatives under these circumstances, and the decided cases indicate that this power has been preserved by Rule 17(c)." (footnotes omitted)).

### B.

■ Having determined that Patsy did not have a "duly appointed representative" in the person of Ms. Levins, we must next determine if the court abused its discretion in holding that Alma was not a proper "next friend" to litigate Patsy's claims. The court ruled that Alma Gardner was not an appropriate person to be appointed next friend of Patsy, because the family court in denying Alma custody of Patsy had found that Patsy, while living with Alma, was a dependent and/or neglected child and that Alma was a clear and present danger to Patsy. App. at 270–71.

Neither Alma nor Ms. Levins was Patsy's legal representative at the time she brought this suit. Thus, since Patsy had no representative, under Rule 17(c) Patsy "may sue by next friend or by a guardian ad litem." The last sentence of Rule 17(c) states that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."

The district court, in selecting an appropriate next friend, necessarily has substantial discretion to decide who will act in the child's best interests. The family court's opinion denying Alma custody of Patsy afforded the district court an extensive record from which to judge Alma's qualifi-

cations as a next friend. Among the relevant findings made by the family court were:

1. "I specifically find by clear and convincing evidence that the child, Patsy Gardner, during any period of residence with Alma Gardner and her mother, Patricia Gardner, was dependent and/or neglected." App. at 334 (footnote omitted).

2. "I further find by clear and convincing evidence ... that Alma Gardner, because of her attitude, is a clear and present danger to the child's physical, mental and emotional well being." App. at 334–35.

3. "Based upon all of the above, I am satisfied that Alma Gardner has absolutely no credibility, [and] that she will say the first thing that comes to her head to obtain a desired result.... In short, Alma is a law unto herself, who insists upon her own way regardless of the effect it has upon her granddaughter." App. at 344–45.

■ The family court supported these findings with a discussion of Alma's improper medication of Patsy, her failure to cooperate with school and state officials attempting to assist Patsy, and the contradictions and inconsistencies in Alma's testimony which destroyed Alma's credibility relative to that of the other witnesses who testified at trial. We agree that, despite that she likely has a genuine love for Patsy and concern for Patsy's best interests, Alma is an inappropriate next friend to protect those interests. Thus, the district court properly declined to designate Alma as next friend in the instant litigation, and we affirm its order denying Plaintiffs' motion to amend the complaint and to request a hearing on the issue of whether Alma is an appropriate next friend.[12]

---

12. Alma also argues that the Defendants should be deemed to have waived their objections to her capacity to sue on behalf of Patsy, because they did not specifically deny, in their initial answers to the complaint, that she had capacity. We do not read Fed.R.Civ.P. 9(a)'s requirement that a party objecting on the basis of capacity "do so by specific negative averment" so narrowly. All parties had the opportunity to brief and argue the issue of Alma's capacity before the district court, and Alma's argument that Patsy's interests in this litigation have been prejudiced is, in light of our holding on the Rule 17(c) issue (discussed *infra* Section I.C), unpersuasive.

Moreover, the district court did grant Defendants' motion to amend the pleadings to conform to the motion in which they raised the capacity issue, thus including a "negative aver-

## C.

The district court next reached the question of whether to appoint someone other than Alma as Patsy's next friend. The court declined to appoint another next friend because it held that the issues were collaterally estopped by the state proceeding. The court concluded that "I do not think that at this point I should appoint a new next friend of Patsy Gardner in this litigation in view of the fact that the litigation is, as I have viewed it, a collateral attack upon the determinations that were made in the Delaware State Court." App. at 273. The court noted that "[m]ost of the issues raised in this litigation are issues which have been before the Family Court in the extended proceedings in the Family Court in denying custody of Patsy to Alma and awarding custody, temporary custody, of Patsy to DCPS." App. at 272.[13] The court then dismissed Patsy's claims.

The last sentence of Rule 17(c) again provides the reference point for reviewing the district court's failure to appoint a next friend for Patsy: "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Thus, under Rule 17(c), a court may appoint a guardian, or it may decline to do so if the child's interests may be protected in an alternative manner. For example, the court may determine that a child without a guardian or next friend is adequately represented by some other person, such as a parent. *See In re Chicago, R.I. and P. R.R.*, 788 F.2d 1280, 1282 (7th Cir.1986).

■ The decision as to whether to appoint a next friend or guardian ad litem rests with the sound discretion of the district court and will not be disturbed unless there has been an abuse of its authority. *See Developmental Disabilities Advocacy Center, Inc. v. Melton*, 689 F.2d 281, 285 (1st Cir.1982). We have found no case, however, holding that a court may decline to appoint a guardian with the result of allowing the child's interests to go *unprotected*. Rather, the cases and commentators appear unanimous in interpreting the above provision of Rule 17(c) to mean that, if a court declines to appoint a guardian, it must act in some other way to protect the child's *interests in the litigation*.

■ The purpose of Rule 17(c) is to further the child's interest in prosecuting or defending a lawsuit, or at least to allow an evaluation of the merits of the suit relative to the child's best interests. The court should have appointed a next friend or at the least held a hearing to determine whether a next friend should be appointed. Rule 17(c) was not intended to be a vehicle for dismissing claims on a summary judgment motion. This result cannot be what the drafters of Rule 17(c) had in mind when they provided that a court which declines to appoint a representative "shall make such other order as it deems proper for the protection of the infant or incompetent person." [14]

---

ment" in the pleadings. While the procedure utilized below may not have been ideal, we are convinced that no party was prejudiced with regard to this issue, and that it would be unjust to deem the Defendants to have waived the capacity defense.

**13.** In declining to appoint a next friend to prosecute this case, the court added: "Since Patsy Gardner is therefore a ward of the State of Delaware, I will put the obligation on the State of Delaware to, if it feels that there is inappropriate care, or decisions on the care, of Patsy Gardner being made, to come forward and start appropriate proceedings in the Delaware Family Court or the appropriate Delaware State Court." App. at 272.

**14.** We recognize that competent counsel briefed and argued Patsy's claims on the motions for summary judgment below. This does not, however, make that attorney Patsy's next friend. It may be possible for the court to appoint counsel as a representative for a minor. In this case, however, not only did no appointment occur, but the appointment of counsel as a representative is not always prudent. One commentator has noted that this is generally inadvisable, because a lawyer who acts in both capacities may sometimes fail to distinguish between the two roles. R. Mackay, The Law of Guardianships 12 (3d ed. 1980).

In particular, because Appellant's counsel also represented Alma, he may not be an appropriate next friend for Patsy, to the extent that Patsy's interests diverge from Alma's. While Alma

Because Patsy was without a representative when the court dismissed her claims, and was otherwise unprotected, the court was without authority to reach the merits of those claims. Yet, the court did so, by holding that they were collaterally estopped. Thus, we determine that the district court abused its discretion in failing to appoint a next friend for Patsy, and in dismissing her claims.

### III.

The district court also granted Defendants' summary judgment motions as to Alma's individual claims, app. at 210, and we now address this issue. Our review of this issue is plenary, *Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1093 (3d Cir.1988), and we employ the same standard of review as did the district court under Fed.R.Civ.P. 56(c).

The district court stated in its Order simply that "Defendants' motions for summary judgment as to Alma Gardner's individual claims are granted." App. at 210. At the hearing the court gave two alternative reasons for its decision. First, it held that because Alma lacked custody of Patsy, she did not have standing to sue. Second, the court noted that the complaint was filed on August 5, 1987, and that the two year statute of limitations barred claims based on incidents which occurred more than two years before the filing of the complaint. App. at 273.[15] The court also stated that those claims not barred by the statute "do not amount to gross negligence or deliberate misconduct on the part of the defendants which would create a cause of action for Alma as an individual...." App. at 273–74.

We agree with the district court's holding on this issue. However, we depart slightly from the court's reasoning in two respects. First, although we believe that most of Alma's claims are barred by the statute and by lack of standing, we determine that some of the claims are barred instead by *collateral estoppel.* Second, because each claim may be disposed of based on either standing, statute of limitations, or collateral estoppel, we need not reach the merits of any of the claims and therefore, unlike the district court, we do not decide whether the claims state causes of action by rising to the level of willfulness or gross negligence.[16]

seeks to litigate a section 1983 claim and recover damages, Patsy might be best served if no claim were brought, so that her life may settle into a productive routine and the defendants who care for her may resume their professional duties unimpeded. We do not necessarily embrace this scenario; we merely suggest that a potential conflict presents itself, and an independent next friend would be the appropriate person to determine Patsy's best interests.

We also note that Plaintiffs' counsel, despite his capable performance, may have a conflict of interest in acting as an attorney for both Alma and Patsy, considering their divergent interests. This situation arose, however, not from any lapse in professional responsibility by counsel, but rather because of the procedural development of this case. When the complaint was filed, counsel represented Alma individually and as next friend of Patsy. When the court removed Alma as next friend, counsel continued to advocate for Patsy's interests rather than simply letting those interests go unprotected. Although at this point Alma's and Patsy's interests had been deemed adverse—and correctly so— we cannot say that counsel's decision to remain Patsy's advocate was in any way unethical. Indeed, counsel's vigorous representation was laudatory. The problem would have been resolved, of course, had the court appointed another next friend, because that person likely would have secured new counsel for Patsy.

**15.** The statute of limitations for causes of action under section 1983 is derived from the "state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980). We have stated that as a matter of federal law, the appropriate period "to be applied is that which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir.1974). In Delaware, the statute of limitations for personal injury actions is two years. Del.Code Ann. tit. 10, § 8119 (1975).

**16.** Because we do not reach the merits of the claims, we do not decide whether Alma has a constitutionally protected liberty interest in her relationship with her granddaughter Patsy. We have not yet had occasion to address this rather complex issue. Although the Supreme Court has addressed closely related issues, *see Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) and *Smith v. Orga-*

■ We elaborate by briefly reviewing each of the thirteen counts of the complaint. Count One of the complaint alleges a violation of Alma's due process rights under the United States and Delaware Constitutions. App. at 52. The first part of this count deals with procedural due process violations arising from Patsy's removal from Alma's home in July 1983. Yet the Family Court of Delaware, after remand by the Superior Court on this point, stated that "I am satisfied that the grandmother had more than ample notice that the [DCPS] intended to remove the child from her care." App. at 346. The Family Court Opinion was affirmed by the Superior Court and the Supreme Court of Delaware. Thus, Alma is collaterally estopped from raising this issue again.

■ The second part of this count alleges denial of a fair hearing on Patsy's school placement. App. at 52. Alma's request for such a hearing occurred in January or February of 1983, however, and thus the statute of limitations bars this claim.[17] The final part of this count alleges that the Defendants failed to give Alma notice of certain proceedings before the Foster Care Review Board in April and May of 1983. *Id.* This issue is also barred by the statute of limitations.

■ Count Two alleges violation of the federal Adoption Assistance and Child Welfare Act. App. at 53. The part of this count alleging failure to prevent separation and to promote reunification of the family is collaterally estopped by the Family Court's finding that "I am satisfied that the school and [DCPS] officials have tried to support the relationship that exists between the grandmother and her granddaughter, but now feel they are no longer able to do so." App. at 345–46. Regarding the other part of this count, the failure to implement a proper case plan and to properly review foster placement, counsel conceded before the district court, and we agree, that this allegation goes to Patsy's claims. We have already determined that Alma is not a valid next friend to bring Patsy's claims, and Alma herself has no standing to bring this claim.

■ Count Three alleges that the Defendants conspired to terminate Alma's right to custody and to prevent the reunification of Patsy and Alma, in violation of 42 U.S.C. § 1985(3). App. at 53. This issue is also collaterally estopped. The custody decision and the right to family reunification were already decided by the Family Court, as discussed above. To the extent this claim rests on the presentation of allegedly false testimony at the first Family Court proceeding, this problem was already addressed when the Superior Court remanded the case to the Family Court after holding that Alma's due process rights had been violated.

Count Four is a vague allegation that "defendants violated the plaintiffs' procedural rights" under the Delaware Constitution and Delaware statutes. App. at 54. At the hearing before the district court, Alma's counsel indicated that this claim

*nization of Foster Families for Equality and Reform*, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), it has not decided the specific issue raised by these facts.

We also briefly clarify a point of confusion. Regarding Alma's standing to bring certain claims, the court stated at the hearing: "Concerning the claims of Alma Gardner individually, [because] she has never had legal custody of Patsy, I find that she does not have standing to assert most of the claims made." App. at 273. In our discussion of each claim, *supra*, we do determine that Alma lacks standing with regard to certain claims. But our reasoning is that those claims relate only to injuries to *Patsy's* interests, rather than to Alma's interests. Our

decision is not based on the notion that Alma has no protected liberty interest in her relationship with Patsy; as stated above, this is an issue which we need not decide, given our disposition of the case. To the extent that the district court held that Alma lacked standing to assert her *individual* claims, we disagree with the district court.

17. Nor does Alma have a valid argument that the statute is tolled because she was never told that her hearing was denied. DCPS' Dependency/Neglect Petition, filed March 1, 1983. ordered Alma to return Patsy to the Smith school, and thus served as constructive notice of the denial of a hearing.

was based on the same issue in Count Three. App. at 258. Therefore, for the same reasons, this claim is also collaterally estopped.

 Count Five alleges that the Defendants violated Delaware law by failing to properly review Patsy's foster care placement, failing to adequately investigate allegations that Patsy was abused while in foster care, and failing to encourage the reunification of Patsy and Alma. App. at 54. The first two allegations go toward duties owed by the Defendants only to Patsy, not to Alma. Therefore, even assuming Alma has a protected liberty interest in the family relationship, which we do not decide, she has no standing to assert these claims on behalf of Patsy. Also, as discussed above, the reunification issue was decided by the Family Court, *see* app. at 345–46, and is thus collaterally estopped.

Count Six alleges that the "defendants performed their statutory duties to provide care and protection for Patsy and to provide supportive services to Alma's family in a reckless and grossly negligent manner." App. at 54. The first claim in this count alleges violations to Patsy's rights, and again Alma has no standing. The second claim goes to the same allegations of failure to reunite the family that were disposed of by the Family Court, and therefore this claim is collaterally estopped.

 Count Seven alleges a breach of Defendants' "fiduciary duties to provide Patsy with adequate care and supervision and to protect her from abuse and neglect." App. at 55. As counsel conceded at the hearing, this claim applies only to Patsy. *See* app. at 258. Therefore, Alma has no standing.

 Count Eight alleges that Defendants breached a contract with Alma to present a petition to the Family Court which would have transferred legal custody from DCPS to Alma. App. at 55. In December of 1982 the DCPS had represented that it would present the petition for transfer of custody in February of 1983. App. at 260. This claim, however, is barred by the two-year statute of limitations.[18]

 Count Nine alleges that Defendants violated Patsy's rights as a third-party beneficiary to the contract referred to in Count Eight. App. at 55. Even if Alma had standing to raise this claim, which is doubtful, the claim is time-barred for the reason stated above in connection with Count Eight.

 Count Ten alleges intentional interference with the family relationship between Alma and Patsy, resulting in mental distress. App. at 56. At the hearing Alma's counsel failed to elaborate on this claim, stating that he had previously addressed the basis of the claim in connection with his discussion of the other counts. App. at 260. Thus, the claim appears to be a reiteration of the issue regarding the alleged failure to reunite the family, which was decided by the Family Court and is collaterally estopped.

 Count Eleven alleges that the Defendants' nondisclosure and misrepresentation of facts before the Superior Court, Family Court and Foster Care Review Board led these bodies to affirm DCPS' decision to remove Patsy from Alma's custody. As a result, the family was broken up, and Patsy suffered various abuses. App. at 56. The allegation that Defendants destroyed evidence that Patsy was abused goes to Patsy's claim, and therefore Alma cannot raise it. The remaining instances of concealment relate to DCPS' failure to tell Alma that her petition

---

18. Alma argued at the hearing that the statute is tolled because evidence of the Defendants' gross negligence and willful misconduct was not discovered until within the statutory period. App. at 259–60. However, the Superior Court, in finding that the first Family Court proceeding violated Alma's procedural due process rights, noted that Alma had not been given a hearing at which to present her custody petition. Therefore, Alma had at least constructive notice that DCPS had not filed a custody petition on Alma's behalf.

for a hearing on Patsy's school placement was denied, and DCPS' neglecting to petition the Family Court on behalf of Alma for custody of Patsy. These claims are time-barred, and because Alma had constructive notice of these developments, as discussed above, the statute of limitations is not tolled.

■ Count Twelve alleges a state law claim of malicious prosecution, see app. at 56–57, relating to a criminal complaint brought by DCPS against Alma for interfering with Patsy's foster placement. The case was heard by a special master in the Family Court, and Alma was found not guilty. See app. at 677–79. The district court did not abuse its discretion in dismissing this pendent state law claim without prejudice.

■ Count Thirteen seeks an accounting of funds against Patsy's foster mother, Esther Gardner, for allegedly misappropriating money given to her by Delaware for Patsy's care. App. at 57. At the hearing, counsel stated, and we agree, that this was Patsy's claim and would have to be brought by Patsy's next friend. App. at 261. Therefore, Alma is unable to assert this claim.

In sum, we affirm the district court's order granting summary judgment against Alma on all claims, for the reasons discussed above.[19]

## IV.

Finally, the district court held that Defendant Patricia Levins was protected by absolute immunity.[20] Because Patsy did not have a next friend in this litigation, and because we hold that the district court improperly reached the merits of Alma's claims, we do not decide the issue of immunity. Because the issue will likely arise again should Patsy bring suit through a valid representative, however, and because we find the district court's holding on this issue somewhat misguided, we provide some guidance to the district court on this issue.

Although section 1983 on its face admits no immunities, the Supreme Court in recent decades has consistently recognized that doctrines of immunity may limit the relief available in section 1983 litigation. See Tower v. Glover, 467 U.S. 914, 920, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984). The Supreme Court has provided absolute immunity for judges, see Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), legislators, see Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), prosecutors, see Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and witnesses, see Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). But the Supreme Court has never decided the issue of whether a guardian ad litem is absolutely immune, nor is there an established common-

---

19. Obviously the district court is free to use our analysis of Alma's claims as guidance in addressing Patsy's claims, should these claims be properly brought before the court. However, we would emphasize that Patsy's claims might not require identical disposition. For example, we note, without deciding the issue, that our collateral estoppel analysis of Alma's claims may not apply to Patsy's claims—even those claims which are the same as Alma's. Patsy was not a party in the state custody proceeding, but rather was actually the object of the dispute between Alma and the state in that proceeding. Thus, we question whether collateral estoppel of issues decided in the family court may properly be invoked against her.

In addition, it may be that the statute of limitations should be tolled as to Patsy's claims, even though it bars some of Alma's claims. Patsy did not have a valid representative in this suit, and thus it may be unreasonable to require her to have filed suit within the statute.

20. In its bench rulings the court stated:

[I]n regard to the guardian ad litem, Ms. Levins, who was appointed by the Delaware Family Court to do certain services in the state action, the record indicates that the actions she has taken in this matter were pursuant to the Family Court directions to her, and therefore I will find that she is absolutely immune from suit in this matter. I think it is important that volunteers, who are acting at the direction of a State Court in a matter of this nature, have the confidence that they can perform their duties without running the risk of being hauled into court to be questioned regarding any decisions they may make.

App. at 274–75.

law tradition of absolute immunity for court-appointed guardians.

In *Kurzawa v. Mueller,* 732 F.2d 1456 (6th Cir.1984), parents brought an action against their son's guardian ad litem and others alleging constitutional violations arising from the unlawful termination of their parental rights. The court held that the guardian ad litem was absolutely immune from suit. The court stated: "[The guardian] must act in the best interests of the child he represents. This position clearly places him squarely within the judicial process to accomplish that goal." *Id.* at 1458.

The *Kurzawa* court based its holding on the Supreme Court's decision in *Briscoe v. LaHue, supra.* In *Briscoe,* the Court held that a police officer testifying at trial should be treated like any other witness, and under traditional common law principles was absolutely immune from suit under section 1983 for damages based on the officer's alleged offering of perjured testimony at the defendants' criminal trials. The Court emphasized the important tradition of protecting the judicial process, and stated that "[i]n short, the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process." 460 U.S. at 335, 103 S.Ct. at 1115.

The *Kurzawa* court extended the rationale of *Briscoe* to conclude that a guardian ad litem was similarly an integral part of the judicial process and therefore was owed absolute immunity. *See* 732 F.2d at 1458.

The court did not analyze the precise functions of the guardian ad litem, however, and we are hesitant to grant a blanket of absolute immunity to all guardians ad litem in the performance of all their duties.[21]

Other Supreme Court and circuit court cases, while not dealing specifically with guardians ad litem, are nonetheless instructive. In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor was absolutely immune from claims arising out of his initiating a prosecution and presenting the state's case. The Court adopted a functional approach toward immunity. The Court stated:

> [The prosecutor's] activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.

*Id.* at 430–31, 96 S.Ct. at 994–96 (footnotes omitted). The Fifth Circuit also has adopted this functional approach in decisions denying absolute immunity to social workers. *See Hodorowski v. Ray,* 844 F.2d 1210, 1213–15 (5th Cir.1988) (challenged conduct was not the initiation of judicial proceedings, but the seizure of children without a court order prior to initiation of those proceedings, a function more akin to that of a policeman than a prosecu-

---

**21.** The court in *Kurzawa* stated that the "failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings." 732 F.2d at 1458. If the court means by this that the guardians capacity as an *advocate* alone confers absolute immunity, we cannot agree. We note, for example, that the Supreme Court has refused to grant absolute immunity to a public defender who allegedly conspired with state officials to convict the plaintiff. *See Tower v. Glover,* 467 U.S. 914, 921–23, 104 S.Ct. 2820, 2825–26, 81 L.Ed.2d 758 (1984).

However, we note that the guardian ad litem in *Kurzawa* was "an attorney who was involved in the legal process in removing [the child] from his home." 732 F.2d at 1457. Another court has stated that in *Kurzawa* "the immune conduct was the initiation of judicial proceedings," and thus the guardian was granted immunity based on his prosecutorial function in that case in accordance with the Supreme Court's holding in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). *See Hodorowski v. Ray,* 844 F.2d 1210, 1214 (5th Cir.1988). If indeed the holding in *Kurzawa* was based on the guardian's function rather than merely his status, we fully agree with the reasoning of the decision.

tor, and thus no absolute immunity); *Austin v. Borel*, 830 F.2d 1356, 1361–63 (5th Cir.1987) (challenged conduct was the filing of an allegedly false verified complaint, which court analogized to a probation officer's filing of a probation report that causes arrest of person on probation, and thus no absolute immunity).

The Ninth Circuit has also taken a functional approach in applying absolute immunity to social workers. *See Meyers v. Contra Costa County Dep't of Social Services*, 812 F.2d 1154, 1157 (9th Cir.) (social worker held absolutely immune from section 1983 liability for initiating dependency proceedings against a parent suspected of abusing his child), *cert. denied*, —— U.S. ——, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). In addition, the First Circuit has taken such an approach in according absolute immunity to a city juvenile officer accused of filing an allegedly false delinquency petition. *See Malachowski v. City of Keene*, 787 F.2d 704, 712 (1st Cir.) ("filing of the petition ... was not an 'investigative' activity, but rather an activity 'intimately associated with the judicial phase of the criminal process ... to which the reasons for absolute immunity apply with full force.'" (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995)), *cert. denied*, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986). Although these decisions granted absolute immunity, they did so because the defendants functioned in a prosecutorial manner.

█ We would agree that a guardian should be absolutely immune when acting as an "integral part[ ] of the judicial process." *Briscoe*, 460 U.S. at 335, 103 S.Ct. at 1115. Furthermore, Supreme Court precedent in analogous cases and the reasoning of the soundly decided circuit cases, discussed above, counsels the adoption of a functional approach to determining whether a guardian ad litem is absolutely im-

mune. Under this approach, a guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality. This does not exhaust the list of functions which would be absolutely immune, and each function would have to be analyzed on a case-by-case basis.

Thus, the district court should, if faced with this issue again, analyze each of the functions performed by Ms. Levins and determine if acts allegedly committed pursuant to those functions warrant immunity under the foregoing analysis.

### IV.

In summary, we affirm the district court's dismissal of Alma as Patsy's next friend, but we hold that the district court abused its discretion in declining to appoint a next friend to represent Patsy Gardner in this litigation and in dismissing Patsy's claims. We instruct the court to appoint a next friend for Patsy. With regard to Alma's individual claims, we affirm the district court's decision granting summary judgment in favor of Defendants.

Costs taxed against the Appellee.