**PUBLISH**

**February 20, 2014**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KIM DAHL,

     Plaintiff - Appellant,

v.

CHARLES F. DAHL, M.D., P.C.
DEFINED BENEFIT PENSION TRUST;
CHARLES F. DAHL, individually;
ROSEMOND V. BLAKELOCK; KELLY
PETERSON; DOES 1 - 5,

     Defendants - Appellees.

No. 13-4023

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:11-CV-00949-TC)**

---

Steve S. Christensen (Craig L. Pankratz with him on the briefs), Christensen Corbett & Pankratz, PLLC, Salt Lake City Utah, for Plaintiff – Appellant.

Stanford E. Purser, Assistant Utah Attorney General, (John E. Swallow, Utah Attorney General, with him on the brief), Salt Lake City, Utah, for Defendant – Appellee, Kelly Peterson.

Rosemond V. Blakelock (Ryan D. Petersen with her on the brief), Blacklock & Petersen, Provo, Utah, for Defendants – Appellees, Charles F. Dahl, M.D., P.C. Defined Benefit Trust, Charles F. Dahl, M.D.P.C., Charles F. Dahl, M.D., and Rosemond V. Blakelock.

---

Before **HARTZ, McKAY,** and **MATHESON,** Circuit Judges.

_____

**HARTZ,** Circuit Judge.

_____

Dr. Charles Dahl and Ms. Kim Dahl were divorced on July 20, 2010, after some four years of bitter wrangling. The divorce did not end the battles. Ms. Dahl filed suit in the United States District Court for the District of Utah, alleging federal-law and state-law claims (1) that Dr. Dahl improperly administered the pension trust of his medical practice to deny her funds and an accounting and (2) that her telephone conversations with the Dahls' minor children were unlawfully monitored, recorded, and disclosed by Dr. Dahl, his attorney, and the children's guardian ad litem (GAL) in the divorce proceedings. The district court dismissed the federal-law pension claims for lack of subject-matter jurisdiction and granted summary judgment against Ms. Dahl on the federal-law wiretapping claims. It then declined to exercise jurisdiction on the state-law claims. Ms. Dahl appeals.

We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's dismissal of Ms. Dahl's pension claims under the federal Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, on the ground that the pension trust did not qualify as an employee benefit plan under ERISA, although the dismissal should have been on the merits rather than for lack of jurisdiction. Given that ruling, we also hold that the court properly declined to exercise jurisdiction over the

2

related state-law claims. We also affirm the district court's summary judgment for the GAL because he was entitled to quasi-judicial immunity for his actions. Finally, we affirm the summary judgment on the claim based on the monitoring of a telephone call on October 12, 2009, because at that time it was objectively reasonable for Dr. Dahl to rely on a court order that had authorized monitoring, but we remand for further proceedings on the alleged monitoring of later calls because there is a genuine dispute of fact about whether such monitoring occurred.

## I. BACKGROUND

### A. State Court Proceedings

When Dr. Dahl filed for divorce in Utah state court, he also filed a motion requesting temporary custody of the couple's two children, C.D. and D.D. He alleged that the children would be irreparably harmed if Ms. Dahl were awarded custody because she was verbally, emotionally, and sometimes physically abusive toward the children. On November 2, 2006, Ms. Dahl stipulated to an order granting Dr. Dahl temporary custody of the children and prohibiting her from unsupervised visitation with them. Kelly Peterson entered his appearance as GAL a month later.

At a review hearing in December 2006, the court's domestic-relations commissioner, noting that the GAL, ACAFS (a private business that was ordered to supervise Ms. Dahl's visits), and the professionals treating the children all agreed that Dr. Dahl should have custody, ordered that the children remain in Dr. Dahl's sole custody and imposed limitations, including the supervision requirement, on Ms. Dahl's visitation.

3

But the commissioner rejected the GAL's recommendation that Dr. Dahl be permitted to record Ms. Dahl's phone calls with the children.

In June 2007, Dr. Dahl filed with the court an affidavit alleging that Ms. Dahl frequently violated the supervised-visitation order and that her conduct was harming the children. As examples of violations, he alleged that Ms. Dahl had discussed the divorce litigation with the children during visitation, contacted the children at school, showed up at the children's church on Sundays, assaulted Dr. Dahl in public with her purse, and accused him in front of the children of being evil and of killing his mother and cousin. He requested, among other things, that the court allow him to monitor and record Ms. Dahl's phone conversations with the children. On July 18, 2007, the court entered an order granting that request. The order said, in part:

> 1. [Ms. Dahl] is restrained from having any type of contact or visitation with the minor children, except for the previously ordered visitation which shall occur under the supervision of ACAFS; one four hour period per week and one eight hour period per week. All visitation shall continue to occur with the supervision of ACAFS and it shall occur and be limited to those areas with good cell phone reception. [Ms. Dahl] is hereby restrained from attending any event, or location, where the minor children may be present, unless her attendance is supervised by ACAFS as part of the Court ordered schedule of visitation.
> 2. [Ms. Dahl] is hereby restrained from harming, harassing, contacting or communicating with [Dr. Dahl], in any place or manner. All communications between [Dr. Dahl] and [Ms. Dahl] shall occur through ACAFS.
> 3. [Ms. Dahl] is hereby restrained from unmonitored telephone communications with the minor children. *All telephone communications between the minor children and* [*Ms. Dahl*] *may be monitored by* [*Dr. Dahl*].

Aplt. App., Vol. 1 at 103–104 (emphasis added).

4

On November 27, 2007, Dr. Dahl's attorney, Rosemond Blakelock, filed a transcript of three phone calls recorded on November 19. The transcript shows that Ms. Dahl discussed the divorce with child C.D. (for instance, encouraging C.D. to advocate for living with Ms. Dahl) and made disparaging comments about Dr. Dahl. A judge issued an ex parte order prohibiting Ms. Dahl from having any telephone contact with the children. When the order was reconsidered during a December 3, 2007, hearing, the commissioner permitted Ms. Dahl to have telephone contact with the children, but only if supervised by ACAFS. The commissioner also noted, with apparent approval, that the telephone conversations were being taped.

In 2009, Ms. Blakelock filed transcripts of four more conversations that had been recorded in January and February of that year between Ms. Dahl and C.D. The court held an evidentiary hearing in March to reevaluate the custody arrangements and issued an order on May 27, 2009. Although the court observed "bad parenting on both sides," Supp. App., Vol. 16 at 3241, it determined that the current arrangement—limiting Ms. Dahl's contact with the children to supervised visitation—was in the best interests of the children and that "at this point in time, there is no basis in the evidence to change the prior orders of the Court." *Id.* at 3242.

A little over four months later the court revisited its decision. On October 7, 2009, it ended supervised visitation and ordered that the children be with Ms. Dahl every other weekend. It explained:

5

But I'm satisfied that in the best interests of the children that the present arrangement is harmful. Something's got to change. And these kids are in pain right now. How we ultimately resolve it I just wouldn't want to forecast, but I think we need some changes right now.

So what I'm inclined to do is that effective immediately we would move to essentially statutory visitation; that the children would be with Mrs. Dahl every other weekend without supervision, that—without—it goes without saying, supervised visitation would be immediately terminated. She would have the children every other weekend. That will start this Friday after school and will go until Sunday at 8:00 p.m.

Telephone restrictions, the children should be able to call either parent, except that whichever parent they're physically with at the time may impose reasonable time limit restraints. So no calls after ten or no midnight calls. That's a reasonable [prerogative] of the custodial parent.

Aplt. App., Vol. 2 at 363. At the same hearing the judge ordered GAL Peterson to interview the children and report back on how they were doing.

Dr. Dahl recorded another telephone conversation that took place between Ms. Dahl and C.D. on October 12, 2009. Mr. Peterson played part of this recording when he interviewed C.D. and also referred to it during the divorce trial on November 3, 2009. At the trial the court, although not condemning any prior monitoring or recording, indicated that the practice should not be continued:

With regard to recording telephone conversations, you know, if a party to the conversation—my understanding of the law is that if a party to the conversation, either party, knows that it's being recorded, then it can be recorded whether the other side knows or not, but a third party, it's unlawful to record a telephone conversation between two people where the other two people do not know. Don't break that law. I can't change the law. That's the law whether I want it to be different or want it to be the same.

Now, Mrs. Dahl, that puts a burden on you, not because of what you may have said or you may say, but because of what will be assumed that you have said. Be very cautious with your child's feelings and emotions, okay, because where—you know, *I've just removed a pretty important*

6

> *source of information* because the law requires that. We—I may still have to look—at some point, if not in this proceeding, in some proceeding down the road, somebody's going to have to say, what's going on over there? [C.D.] talks to her mom on the phone. And because there are no tapes, then they'll be assuming—from the conduct, they'll be inferring what goes on. It removes the quality of the information, so you need to be very careful about what you do.

*Id.* at 403–04 (emphasis added).[1] Ms. Dahl alleges, but Dr. Dahl disputes, that Dr. Dahl recorded later conversations in November and December of 2009.

Mr. Peterson was removed as GAL on February 10, 2010, because his brother, who had provided him legal assistance in the case, had joined Ms. Blakelock's law practice. After removing Mr. Peterson, the court ruled that a new GAL would have to be appointed because of an ongoing need for someone to represent the children.

The divorce decree was entered on July 20, 2010. The court awarded Dr. Dahl his medical practice, Charles F. Dahl, M.D., P.C. (the practice), as his separate property. But it awarded Ms. Dahl a share of the defined-benefit pension trust created by the practice in 2002. She received a distribution of roughly $750,000 from the pension trust on January 19, 2012.

### B.    Federal Litigation

In October 2011, Ms. Dahl brought her federal suit against Dr. Dahl, the pension trust, Ms. Blakelock, and Mr. Peterson. She sued Dr. Dahl and the trust on state-law claims of conversion and breach of fiduciary duty and on a claim for breach of fiduciary

---

[1]  We express no view on the state court's interpretation of the wiretapping statutes.

duty under ERISA, and she brought claims under federal and state wiretap laws against Dr. Dahl, Ms. Blakelock, and Mr. Peterson. The defendants filed motions for summary judgment on all claims. The district court granted Mr. Peterson's motion for summary judgment on the federal wiretapping claims, holding that he was entitled to quasi-judicial immunity for actions performed within the scope of his GAL duties. It granted Dr. Dahl and Ms. Blakelock's motion for summary judgment on the federal wiretapping claims on the ground that Dr. Dahl's recording of calls between Ms. Dahl and the children fell within a vicarious-consent (Dr. Dahl on behalf of the children) exception to the federal wiretap statute. Finally, it held that it did not have jurisdiction over the ERISA claim because the pension trust was not subject to ERISA, and it declined to exercise supplemental jurisdiction over the state-law claims, *see* 28 U.S.C. § 1367(c).

## II.     DISCUSSION

### A.     Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1077 (10th Cir. 2011) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*,

8

709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted).  When

considering a motion for summary judgment "[w]e examine the record and all reasonable

inferences that might be drawn from it in the light most favorable to the non-moving

party."  *Merrifield*, 654 F.3d at 1077 (internal quotation marks omitted).  We also review

questions of subject-matter jurisdiction de novo.  *See Robinson v. Union Pac. R.R.*, 245

F.3d 1188, 1191 (10th Cir. 2001).

We begin with the issues arising out of the pension trust.  We then turn to the

monitoring of telephone calls, although we address GAL immunity before discussing the

merits.

### B.  ERISA

ERISA was "[e]nacted to protect the interests of participants in employee benefit

plans and their beneficiaries."  *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v.*

*Hendon*, 541 U.S. 1, 6 (2004) (ellipses and internal quotation marks omitted).  It does so

in part "by providing for appropriate remedies, sanctions, and ready access to the Federal

courts."  29 U.S.C. § 1001(b).  Most of these protections are found in Title I of the Act,

which includes provisions for civil and criminal enforcement.  *See Yates*, 541 U.S. at 6.

The threshold question here, however, is whether ERISA covers Dr. Dahl's

pension trust.  A "benefit plan is subject to ERISA only if it provides benefits to at least

one employee."  *Sipma v. Mass. Cas. Ins. Co.*, 256 F.3d 1006, 1009 (10th Cir. 2001).

The applicable regulations exclude from Title I's definition of *employee* a sole owner or

an individual and spouse who together have complete ownership.  *See id.* at 1011;

9

29 C.F.R. § 2510.3-3(c). "Plans that cover only sole owners or partners and their spouses . . . fall outside Title I's domain." *Yates*, 541 U.S. at 21.

Ms. Dahl acknowledges that the pension trust created by Dr. Dahl's practice could not qualify for ERISA protection during her marriage because she and Dr. Dahl were the only plan participants. She argues in her opening brief, however, that the trust became ERISA qualified upon her divorce because she was transformed from a spousal participant into an employee participant. Ms. Dahl's argument assumes that she was an employee of Dr. Dahl's practice following her divorce in 2010. But although tax records show that she was compensated as an employee of the practice in 2002 and 2003, she has not presented comparable records for any later year. And her occupation being listed as "manager" on tax returns for 2003 through 2006 hardly established her employment status at the time of her divorce in 2010.

Ms. Dahl's reply brief on appeal asserts the new argument that "ERISA's definition of employee includes former employees." Aplt. Reply Br. at 22. But we will not consider this argument because Ms. Dahl did not make it in her opening brief or in district court. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("It is clear in this circuit that absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."). Thus, Ms. Dahl has not shown that the pension trust qualifies as an employee benefit plan

under ERISA.  We affirm the district court's dismissal of the ERISA claims.  We hold, however, that the dismissal was on the merits, not for lack of jurisdiction.  We are persuaded by the reasoning of the Sixth Circuit that recent Supreme Court decisions compel the conclusion that the existence of a benefit plan subject to ERISA is not a jurisdictional requirement but an element of a claim under ERISA.  *See Daft v. Advest, Inc.*, 658 F.3d 583, 587–94 (6th Cir. 2011).  Therefore, on remand the district court must correct its judgment in this regard.  This correction requires no change in the dismissal of the state-law pension claims.  Given its ruling on the ERISA claim, the district court did not abuse its discretion in declining under 28 U.S.C. § 1367(c) to continue its jurisdiction over the state-law claims.  *See Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009) ("We review a denial of supplemental jurisdiction for abuse of discretion.").

### C.      Immunity of GAL

Ms. Dahl challenges the district court's decision that GAL Peterson was entitled to immunity from her claims against him under federal wiretap law.  We reject the challenge.

Absolute immunity has long been available to protect judges from liability for acts performed in their judicial capacity.  *See Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985).  Over time the defense has been extended to "certain others who perform functions closely associated with the judicial process."  *Id.* at 200.  There is widespread recognition that guardians ad litem are entitled to the defense, which is often called quasi-judicial

11

immunity when it is applied to someone other than a judge. *See Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989) (guardian ad litem has "absolute quasi-judicial immunity for those activities integrally related to the judicial process"); *Gardner ex rel. Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) ("We would agree that a guardian [ad litem] should be absolutely immune when acting as an integral part of the judicial process." (brackets and internal quotation marks omitted)); *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994) (guardians ad litem in custody cases are entitled to quasi-judicial immunity from § 1983 liability); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) ("A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings."); *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Guardians ad litem . . . are absolutely immune from liability for damages when they act at the court's direction."); *McCuen v. Polk Cnty., Iowa*, 893 F.2d 172, 174 (8th Cir. 1990) (guardian ad litem is entitled to absolute immunity); *Wideman v. Colorado*, 409 F. App'x 184, 186 (10th Cir. 2010) (affirming grant of absolute quasi-judicial immunity to a guardian ad litem).

There are limits to the scope of the immunity for a GAL. Not every act performed by a person with that title is immunized. For example, there is no immunity for acts taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (internal quotation marks omitted). We need not resolve the precise boundaries of the privilege, however, because Mr. Peterson's challenged acts were within the core duties of a GAL in assisting the court—that is, in performing a "function[] closely

12

associated with the judicial process." *Cleavinger*, 474 U.S. at 200. As a fellow circuit has said, "[A] guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality." *Gardner*, 874 F.2d at 146.

The claim against Mr. Peterson rests on his use of the recording of a conversation between Ms. Dahl and C.D. on October 12, 2009. He used the recording twice: first, when he played part of it during an interview with C.D.; and second, when he discussed it during his verbal report to the court on November 3. Because the court on October 7 had directed Mr. Peterson to meet with the children and report on how they were responding to the change in Ms. Dahl's visitation privileges, both uses were within the report-and-recommendation function that generally warrants immunity for guardians ad litem. *See id.*

Ms. Dahl argues that Mr. Peterson acted in in the absence of all jurisdiction because he violated federal and state wiretapping laws. But an act is not outside of a GAL's jurisdiction just because it is wrongful, even unlawful. As the Supreme Court said in *Stump*, "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." 435 U.S. at 356–57 (internal quotation marks omitted). Immunity does not protect only the innocent.

13

Why grant immunity to those who have no need of it? *See Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990) ("Absolute immunity has its costs because those with valid claims against dishonest or malicious government officials are denied relief."). Immunity is conferred so that judicial officers can exercise their judgment (which on occasion may not be very good) without fear of being sued in tort.

Alternatively, Ms. Dahl argues that Mr. Peterson was not acting within his jurisdiction because he "abandoned his role as the GAL to advocate for [Dr. Dahl]." Aplt. Br. at 44. But her complaint amounts to no more than challenging Mr. Peterson's motives and criticizing what he decided to do or say on various occasions; she does not dispute his authority to make the decisions. Certainly a GAL has authority to assist one of the parties when the parties are at odds about who should have custody. Ms. Dahl's grievance is only that the GAL decided to assist Dr. Dahl instead of her. Moreover, even if Mr. Peterson had acted outside his jurisdiction in some respects, he would not thereby forfeit immunity for the conduct challenged here regarding the October 12 recording. Because Mr. Peterson used the recording in furtherance of his GAL duties and in response to the court's order to report on the well-being of the children, he is entitled to quasi-judicial immunity on the federal wiretapping claim.

### D.    Federal Wiretapping Claims

The federal wiretap statute makes it unlawful to "intentionally intercept[] . . . any wire, oral, or electronic communication" or to intentionally use or disclose the contents of any communications known to be illegally obtained. 18 U.S.C. § 2511(1)(a), (c), (d). It

14

authorizes civil actions against violators to recover statutory damages, punitive damages, reasonable attorney fees, and other litigation costs. *See id.* § 2520. The statute, however, provides an exception when one party to the communication has given prior consent to the interception, *see id.* § 2511(2)(d), and recognizes a defense for good-faith reliance on a court order, *see id.* § 2520(d). The parties agree that § 2520(d) applies in this context and they agree on the applicable test for good faith: "[A] defendant may invoke the defense of good faith reliance on a court order only if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable." *Jacobson v. Rose*, 592 F.2d 515, 523 (9th Cir. 1978). We will apply that test for purposes of this litigation.

Ms. Dahl alleges that Dr. Dahl and his attorney, Ms. Blakelock, violated the federal wiretap statute when they recorded or used recordings of telephone conversations that she had with C.D. on October 12, 2009, and thereafter. We first address Ms. Dahl's argument regarding the October 12 conversation—which all parties agree Dr. Dahl recorded—and then turn to Ms. Dahl's allegations that there were later recordings.

Dr. Dahl contends that he recorded the October 12 conversation in reliance on the state court's order of July 18, 2007. Ms. Dahl does not dispute Dr. Dahl's subjective reliance on the order, but only the objective reasonableness of that reliance. The July 18 order stated: "[Ms. Dahl] is hereby restrained from unmonitored telephone communications with the minor children. All telephone communications between the minor children and [Ms. Dahl] may be monitored by [Dr. Dahl]." Aplt. App., Vol. 1 at

15

104. Ms. Dahl argues that the court lifted the order permitting monitoring when it granted her unsupervised visitation on October 7, 2009. In particular, she points to the language in the October 7 order regarding telephone restrictions:

> Telephone restrictions, the children should be able to call either parent, except that whichever parent they're physically with at the time may impose reasonable time limit restraints. So no calls after ten or no midnight calls. That's a reasonable [prerogative] of the custodial parent.

*Id.* at 363. She says that it is "unambiguous" that the order does not allow Dr. Dahl to record her calls. Aplt. Br. at 38. She also offers the judge's comments on November 3, 2009, admonishing the parties not to break the law, as additional evidence that the October 7 order removed any authorization to record her calls.

We are not persuaded. There was an outstanding, unchallenged order allowing monitoring—the order of July 18, 2007. The court did not mention that order on October 7, much less vacate it. The termination of supervised visitation might indicate that the court thought monitoring was no longer proper; but the court described the new arrangement as a "stopgap" and it wanted a follow-up report from the GAL on how the new arrangement was working. Aplt. App., Vol. 2 at 363. Thus, it would have been reasonable to conclude that monitoring would still be useful to assess the loosening of restrictions on Ms. Dahl and that it was still approved. Ms. Dahl contends that the court's statements on November 3 establish that its statements on October 7 had prohibited further monitoring. But what the court said in November could not affect Dr. Dahl's interpretation on October 12 of the court's prior statements. And, in our view, the

16

November 3 statements actually support Dr. Dahl.  When the court said to Ms. Dahl on November 3 that "I've just removed a pretty important source of information," *id.* at 404, the natural inference is that it was referring to its immediately preceding remarks saying that third-party recording of conversations is illegal.  We doubt that the court was saying that its ruling a month earlier was what "I've just [done]."  *Id.*  We hold that it was objectively reasonable for Dr. Dahl to believe that the monitoring of the October 12 conversation was authorized by the court's order of July 18, 2007.  We therefore need not address the vicarious-consent doctrine relied on by the district court.

We now turn to the alleged monitoring of conversations after November 3, 2009. The sole defense of Dr. Dahl and Ms. Blakelock is that there is no evidence of any monitoring after October 12.  The district court apparently agreed that there was no such monitoring, because it did not address the matter.  In our view, however, Ms. Dahl put on sufficient evidence in her response to the motion for summary judgment to raise a genuine issue regarding whether such monitoring occurred.

Ms. Dahl submitted an affidavit stating:

> 34.  On about December 27, 2009, I learned that Dr. Dahl had continued to record my telephone conversations, and I obtained fifteen digital recordings of telephone conversations that I had with either C.D. or D.D.
> 35.  At least two of the telephone conversations were wiretapped in December 2009 because during one of them, I asked C.D. if she was excited to sing in a Christmas concert the next week.

*Id.* at 409.  Defendants argue that "[n]o corroboration, proof, foundation or authentication of the conversations or the statement was offered to the court in

17

response to the motion for summary judgment that was pending for over four months." Aplee. (Dahl and Blakelock) Br. at 43–44. But Ms. Dahl's sworn statement, based on personal knowledge, suffices. *See Sanchez v. Vilsack*, 695 F.3d 1174, 1180 n.4 (10th Cir. 2012) ("So long as an affidavit is based upon personal knowledge and sets forth facts that would be admissible in evidence it is legally competent to oppose summary judgment, irrespective of its self-serving nature." (brackets, citations, and internal quotation marks omitted)). She did not need to produce the recordings of other conversations at the summary-judgment stage. Even if the affidavit could be challenged on whether she had personal knowledge of the dates of the recordings, her statement about the Christmas concert was sufficient to raise a genuine fact question. We therefore must remand to the district court for further proceedings regarding the alleged monitoring after November 3.

## III. CONCLUSION

We AFFIRM the judgment of the district court on the ERISA claims, except that we instruct the district court to dismiss the claims on the merits with prejudice. We also AFFIRM the district court's decision not to exercise supplemental jurisdiction over the state-law pension claims; we AFFIRM the grant of summary judgment to Mr. Peterson on the federal wiretapping claims; and we AFFIRM the summary judgment to Dr. Dahl and Ms. Blakelock on the federal wiretapping claims based on the October 12, 2009, telephone monitoring. We REMAND to the district court for further consideration of

18

Ms. Dahl's claims against Dr. Dahl and Ms. Blakelock based on alleged monitoring of telephone conversations after November 3, 2009, and for further consideration of whether to exercise its discretion not to assume jurisdiction over the state-law wiretapping claims. We DENY the defendants' motions to strike parts of Ms. Dahl's briefs and their request for resulting damages, fees, and costs.