**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

DENVER WARD, individually and as the
parent and guardian of H.A.B., a minor
child,

    Plaintiff - Appellant,

v.

LAURA FISHER; CAROL L. SWENSON;
BRAD GRUNDY,

    Defendants - Appellees.

No. 24-5083
(D.C. No. 4:23-CV-00554-JFH-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

Plaintiff Denver Ward filed this action against defendants Laura Fisher, Carol

Swenson, and Brad Grundy arising out of their alleged acts and omissions in

connection with an Oklahoma state paternity and custody action in which Mr. Ward

was a party.  The district court dismissed Mr. Ward's claims.  Mr. Ward now appeals.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Factual history

In January 2016, Mr. Ward became involved in an Oklahoma state paternity and custody action (the Paternity Action). Mr. Ward hired Mr. Grundy, a licensed attorney in the State of Oklahoma, to represent him in the Paternity Action. Mr. Ward conceded he was the father of the minor child, H.A.B., but alleged that H.A.B.'s mother, Debra Billingsly, was subjecting H.A.B. to medical abuse (formerly called Munchausen syndrome by proxy).

The state court appointed Ms. Swenson as a guardian ad litem for H.A.B. The state court also appointed Dr. Fisher, a licensed psychologist, as a child custody evaluator.

Dr. Fisher performed a custody evaluation and completed her initial report in November 2016. At that time, Dr. Fisher "had concerns about the medical history of" H.A.B., but "did not have information from a medical professional to substantiate the concern for medical child abuse." Aplt. App. vol. I at 67.

In December 2016, the state court entered an agreed temporary order awarding joint legal custody of H.A.B., with the parties "to share physical custody on a 50/50 basis." *Id.* at 217. Shortly thereafter, in early 2017, Mr. Ward retained new counsel to represent him in the Paternity Action.

Dr. Mary Ellen Stockett, a specialist in pediatric child abuse, reviewed H.A.B.'s medical records and opined that H.A.B. had been subjected to medical child abuse by Ms. Billingsly. Dr. Stockett reported the abuse to the Oklahoma

Department of Human Services (ODHS). In April 2017, ODHS issued a finding substantiating Ms. Billingsly's abuse of H.A.B.

Dr. Fisher reviewed Dr. Stockett's written report and also consulted with another expert in medical child abuse. After doing so, Dr. Fisher opined that H.A.B. was "in a situation which potentially place[d] her in danger of irreparable harm while in the physical custody of" Ms. Billingsly. *Id.* at 67.

In June 2017, Mr. Ward filed an application for an ex parte emergency order in the Paternity Action. In support of the application, Mr. Ward submitted an affidavit from Ms. Swenson in which she concluded, based upon the report of Dr. Stockett, that the only way to ensure H.A.B.'s safety and well-being was "to terminate the temporary joint custody and grant physical custody to" Mr. Ward "subject to supervised visitation with" Ms. Billingsly. *Id.* at 223.

The State Court held an evidentiary hearing in late June 2017 and awarded custody of H.A.B. to Mr. Ward while simultaneously restricting Ms. Billingsly's visitation to professional supervision.

In April 2019, Mr. Ward filed suit against Mr. Grundy and his law firm in Oklahoma state court asserting claims of negligence and breach of contract in connection with Mr. Grundy's representation of Mr. Ward in the Paternity Action. In February 2020, Mr. Ward voluntarily dismissed the lawsuit without having served Mr. Grundy or his law firm.

3

In September 2020, Mr. Ward refiled his case against Mr. Grundy in federal district court. In November 2022, Mr. Ward voluntarily dismissed the lawsuit without prejudice.

## II. Procedural history

On November 16, 2023, Mr. Ward filed suit against Dr. Fisher, Ms. Swenson, and Mr. Grundy in Oklahoma state court asserting both federal and state law claims. Count I of the complaint alleged that Dr. Fisher and Ms. Swenson "breached their respective contracts when they became aware of the abuse being suffered by H.A.B. and failed to act to protect her." *Id.* at 21. Count I further alleged that Mr. Grundy "breached this contract when he chose not to pursue an emergency application" for temporary custody of H.A.B. and "by failing to provide all medical records" to an expert witness, and that his "acts and omissions" resulted in the state court's custody decision being "delayed by more than a year," which in turn "subjected [H.A.B.] to untold atrocities and cost" Mr. Ward "over one hundred thousand dollars . . . in additional attorneys' fees and costs." *Id.* at 22. Count II alleged negligence claims against all three defendants related to their respective roles in the Paternity Action. Count III alleged that Dr. Fisher and Ms. Swenson, "acting under cover of state law, violated the Eighth and/or Fourteenth Amendments of the United States Constitution" by denying, delaying, and obstructing "immediate and emergent intervention to prevent further abuse" of H.A.B. and by "disregard[ing] the known, obvious[,] and substantial risks to [her] health and safety." *Id.* at 24. Count IV of the complaint sought punitive damages against all three defendants.

Dr. Fisher removed the case to federal district court on the basis of federal subject matter jurisdiction and then moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that "[c]ourt-appointed child custody evaluators are entitled to quasi-judicial immunity from suit." *Id.* at 30. Ms. Swenson likewise moved to dismiss the claims against her on the basis of quasi-judicial immunity. Mr. Grundy, for his part, moved to dismiss the claims against him as untimely.

The district court granted the motions to dismiss. In doing so, it concluded both Dr. Fisher and Ms. Swenson were entitled to quasi-judicial immunity from Mr. Ward's claims. As for the claims against Mr. Grundy, the district court noted that Mr. Ward "concede[d] the negligence claim [wa]s time-barred." *Id.* at 261. The district court in turn concluded that Mr. Ward's breach of contract claim against Mr. Grundy was also time-barred.

Following the entry of final judgment, Mr. Ward filed a timely notice of appeal.

## III.  Analysis

We review de novo a district court's "grant of a motion to dismiss pursuant to Rule 12(b)(6), applying the same legal standard applicable in the district court." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Under that standard, "[a]ll well-pleaded facts, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party." *Id.* If the complaint includes "enough facts to state a claim to relief that is plausible on its face," then dismissal is not warranted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. The claims against Dr. Fisher and Ms. Swenson

Mr. Ward argues the district court erred in concluding Ms. Swenson and Dr. Fisher were entitled to quasi-judicial immunity. For the reasons that follow, we disagree.

Absolute immunity, which "has long been available to protect judges from liability for acts performed in their judicial capacity," "has been extended to 'certain others who perform functions closely associated with the judicial process.'" *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 630 (10th Cir. 2014) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). This includes guardians ad litem, such as Ms. Swenson, and court-appointed child custody evaluators, such as Dr. Fisher. *See Dahl*, 744 F.3d at 630 (guardian ad litems); *Hughes v. Long*, 242 F.3d 121, 128 (3d Cir. 2001) (child custody evaluators). Such immunity "is often called quasi-judicial immunity" because "it is applied to someone other than a judge." *Dahl*, 744 F.3d at 630. The purpose of quasi-judicial immunity is to allow these officers to "exercise their judgment (which on occasion may not be very good) without fear of being sued in tort." *Id.* at 631.

There are, of course, "limits to the scope of th[is] immunity." *Id.* at 630. But those cases are the exception, rather than the rule. As the Supreme Court noted long ago, a party entitled to judicial or quasi-judicial immunity does not lose that

6

immunity simply because "the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

After examining the record on appeal, we agree with the district court that Ms. Swenson and Dr. Fisher were entitled to quasi-judicial immunity from Mr. Ward's claims. Notably, the complaint concedes both defendants were appointed by the state court to assist it in the resolution of the Paternity Action. Further, all of the allegations against Ms. Swenson and Dr. Fisher involve acts that can be characterized as "within the core duties" of the respective roles they were appointed to in "assisting the court" in the Paternity Action. *Dahl*, 744 F.3d at 630. Although the complaint alleges that both defendants acted improperly in carrying out their appointments, none of the allegations are sufficient to establish that either defendant acted in the clear absence of all jurisdiction.[1] We therefore conclude the district court did not err in dismissing the claims against Ms. Swenson and Dr. Fisher.[2]

---

[1] The complaint alleges, for example, that both defendants at times advocated for Ms. Billingsly and also ignored the abuse allegations and intentionally delayed resolution of the Paternity Action to benefit themselves financially.

[2] Because we conclude Dr. Fisher was entitled to quasi-judicial immunity from Mr. Ward's claims, we need not address Mr. Ward's argument that Dr. Fisher was a state actor for purposes of 42 U.S.C. § 1983.

*B. The claims against Mr. Grundy*

Mr. Ward argues the district court erred in dismissing his breach of contract claim against Mr. Grundy as time-barred. "We review de novo a district court's ruling regarding the applicability of a statute of limitations." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks omitted). "A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Id.* (internal quotation marks and brackets omitted).

In Oklahoma, "a party may bring a claim based in both tort and contract against a professional and . . . such action may arise from the same set of facts." *Great Plains Fed. Sav. & Loan Ass'n v. Dabney*, 846 P.2d 1088, 1092 (Okla. 1993). That said, a breach of contract claim may only be brought "where the parties have spelled out the performance promised by defendant and defendant commits to the performance without reference to and irrespective of any general standard" of skill or care. *Id.* If, however, the underlying contract "merely incorporates by reference or by implication a general standard of skill or care which [the] defendant would be bound [by] independent of the contract," then only a tort claim may be brought and such claim is "governed by the tort limitation period." *Id.* In Oklahoma, legal malpractice claims based in tort are "governed by [a] two-year statute of limitations." *Funnell v. Jones*, 737 P.2d 105, 107 (Okla. 1985).

The district court concluded the written engagement letter between Mr. Ward and Mr. Grundy did not spell out the performance promised by Mr. Grundy and

8

instead "merely restate[d] [Mr.] Grundy's normal duty of care." Aplt. App. vol. I at 262–63. The district court therefore concluded "[t]he written engagement letter d[id] not provide grounds for a five-year contract-based statute of limitations." *Id.* at 263. As a result, the district court dismissed Mr. Ward's claim as untimely.

Mr. Ward disputes the district court's interpretation of the written engagement letter. He notes the letter stated Mr. Grundy would "represent [him] in connection with [his] paternity action with [Ms.] Billingsly." *Id.* at 192. This language, Mr. Ward argues, spelled out the performance promised by Mr. Grundy "without references and irrespective of general standards" of skill or care. Aplt. Br. at 18. Thus, Mr. Ward argues, he was permitted under *Dabney* to bring a breach-of-contract claim against Mr. Grundy which was governed by a five-year statute of limitations.

We reject this argument. The contractual language Mr. Ward relies on simply described the general nature of Mr. Grundy's engagement, i.e., Mr. Grundy agreed to represent Mr. Ward in the Paternity Action. It did not, as Mr. Ward suggests, spell out the performance promised by Mr. Grundy. Thus, we agree with the district court that, under *Dabney*, Mr. Ward is not entitled to the benefit of the five-year limitations period applicable to breach-of-contract claims.

## IV. Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

9