**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RAYMOND SCHWAB; AMELIA
SCHWAB,

     Plaintiffs - Appellants,

v.

KANSAS DEPARTMENT OF
CHILDREN AND FAMILIES; KIM
YOXELL; ANGIE SUTHER; PHYLLIS
GILMORE; GINA MEIER-HUMMEL;
THERESA FREED; KENDRA BAKER;
MIRANDA JOHNSON; LORA INGLES;
BARRY WILKERSON; BETHANY
FIELDS; RILEY COUNTY POLICE
DEPARTMENT; CARLA SWARTZ;
JULIA GOGGINS; KVC; PATHWAYS
FAMILY SERVICES, LLC; PAWNEE
MENTAL HEALTH SERVICES;
SUNFLOWER CASA PROJECT; ST.
FRANCIS COMMUNITY SERVICES;
KATHY BOYD; LAURA PRICE;
KAYLEE POSSEN; ANTHONY
ALLISON; MICHELLE ALLISON; DOES
1-10,

     Defendants - Appellees,

and

KRIS KOBACH; SCOTT SCHWAB;
RANDY DEBENHAM; BLAKE
ROBINSON; ANDREW VINDUSKA;
RHONDA EISENBAREGER; DEJA
JACKSON; AMANDA ALLISON-
BALLARD,

     Defendants.

No. 20-3099
(D.C. No. 2:18-CV-02488-DDC-GEB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.

_____

Raymond Schwab and Amelia Schwab (the "Schwabs") appeal from the district court's judgment dismissing their pro se complaint in which they asserted claims against numerous defendants under 42 U.S.C. §§ 1983 and 1985 and Kansas state law. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

While the Schwabs' five children were staying with their grandmother in April 2015, she and the children's uncle, defendant Anthony Allison, contacted the police department in Riley County, Kansas ("RCPD"), to express concerns about how the Schwabs were caring for their children. The Schwabs later alleged that their relatives' assertions to the police were false and that the children were instead being

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

hidden from them.  The RCPD took custody of the Schwabs' children.  Defendants

Carla Swartz[1] and Julia Goggins were the investigating officers with RCPD.

The State of Kansas initiated proceedings in state court to determine if the

Schwab children were Children in Need of Care ("CINC") under Kansas law.  After a

hearing, the state court placed the children in the temporary custody of the Kansas

Department for Children and Families ("DCF") and appointed defendant Lora Ingles

as guardian ad litem to represent the children.  Following another hearing in

July 2015, at which the Schwabs were represented by counsel, the state court

adjudicated the Schwab children as CINC.  Raymond appealed that decision.  The

Kansas Court of Appeals affirmed and the Kansas Supreme Court denied review.

In March 2016, the Schwabs filed a complaint in federal district court (the

"2016 Action") against numerous defendants alleging civil rights violations and other

claims related to the initial seizure of their children, the CINC adjudication, and later

events.  All defendants moved to dismiss.  The district court dismissed certain claims

without prejudice, holding they were either barred by the *Rooker-Feldman*[2] doctrine

or the court was required to abstain pursuant to the *Younger*[3] doctrine.  To the extent

the Schwabs had asserted claims for money damages under §§ 1983 and 1985 that

---

[1]The complaint named Carla "Schwartz" as a defendant.  We refer to Carla "Swartz," reflecting the spelling of her last name used by all parties and the district court in later filings.

[2] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[3] *Younger v. Harris*, 401 U.S. 37 (1971).

3

were not barred by *Rooker-Feldman*, the court dismissed those claims with prejudice for failure to state plausible claims for relief. The district court entered judgment against the Schwabs in the 2016 Action in July 2017. The Schwabs' appeal to this court was dismissed for lack of prosecution.

The Schwabs' children were returned to their custody in December 2017. They filed this action in August 2018 (the "2018 Action"), once again asserting claims related to the initial seizure of their children, the CINC adjudication, and later events. The Schwabs named as defendants in the 2018 Action some of the defendants they had named in the 2016 Action. They asserted federal civil rights claims under §§ 1983 and 1985, as well as claims under Kansas state law. In an order dated September 25, 2019 (the "First Dismissal Order"), the district court ruled on eleven motions to dismiss filed by twenty-four of the defendants, granting some motions in their entirety and some only in part. At that point, a few federal claims and some state-law claims remained pending.

Anthony Allison and his spouse, defendant Michelle Allison (the "Allisons"), were served with the Schwabs' complaint in the 2018 Action shortly after the First Dismissal Order was entered and more than a year after the case was filed. They moved to dismiss on October 8, 2019. In response to that motion, the Schwabs moved for leave to amend their complaint, seeking to amend not only their claims against the Allisons but also to cure deficiencies in their claims against other defendants in response to the First Dismissal Order.

4

In an order dated April 28, 2020 (the "Second Dismissal Order"), the district court denied the Schwabs' leave to amend their complaint. It held they could no longer amend as a matter of course under Federal Rule of Civil Procedure 15(a)(1), and denied them leave to amend under Rule 15(a)(2) based upon their unexplained delay. The district court then dismissed the Schwabs' remaining federal claims, holding they failed to state plausible claims under §§ 1983 or 1985, and declined to exercise supplemental jurisdiction over the remaining state-law claims. It therefore dismissed the 2018 Action and entered a final judgment against the Schwabs.

## II.    Discussion

On appeal, the Schwabs contend that the district court erred in (1) denying them leave to amend; (2) dismissing some of their claims against some of the defendants based on the their failure "to state a claim to relief that is plausible on its face," *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted); (3) dismissing claims against defendants who were never served with the complaint; and (4) declining to exercise supplemental jurisdiction over the remaining state-law claims after dismissing all of the federal claims.

Because the Schwabs are proceeding pro se, we liberally construe their complaint and their appeal brief. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998). The Schwabs nonetheless must "follow the same rules of procedure that govern other litigants." *Garrett*, 425 F.3d at 840 (internal quotation marks omitted).

5

### A. Denial of Leave to Amend

#### 1. Amendment as a Matter of Course

In the district court, the Schwabs asserted that they could amend their complaint once as a matter of course because they did so within 21 days after service of the Allisons' motion to dismiss. Rule 15(a)(1)(B) provides that "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The district court rejected the Schwabs' contention, holding they were required to seek leave to amend because a single 21-day period to amend as a matter of course had been triggered after the first motion to dismiss was filed in the case on December 27, 2018. The court noted, however, that there is a split of authority on Rule 15(a)(1)'s application in multi-defendant cases.

We review de novo the district court's construction of a procedural rule. *See Esposito v. United States*, 368 F.3d 1271, 1275 (10th Cir. 2004). The Schwabs continue to assert on appeal that they filed their motion to amend within 21 days of the Allisons' motion to dismiss. But they fail to develop an argument that the district court erred in construing Rule 15(a)(1) to preclude an amendment as a matter of course at that time. *See Kelley v. City of Albuquerque*, 542 F.3d 802, 819 (10th Cir. 2008) (stating that "perfunctory" contentions of error "fail[] to frame and develop an issue" and are therefore "[in]sufficient to invoke appellate review" (internal

quotation marks omitted)). We will not craft such an argument for them. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).

## 2. Unexplained Delay in Seeking Leave to Amend

The Schwabs argue that the district court erred in denying leave to amend under Rule 15(a)(2), which directs that "[t]he court should freely give leave when justice so requires." The court denied their motion because they failed to explain their delay in seeking to amend for more than a year after they filed their original complaint. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) ("[D]enial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." (internal quotation marks omitted)). It held the Schwabs did not adequately explain their delay by stating that they had only recently discussed certain details of the case with their children. And it noted that they took no steps to amend their complaint in response to the eleven previous motions to dismiss, or even directly after entry of the First Dismissal Order.

We review the denial of a motion for leave to amend for an abuse of discretion. *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009). The Schwabs' contentions on appeal focus on the timing of service on the Allisons, which did not occur until more than a year after the case was filed. While other defendants' motions to dismiss were pending, the Schwabs and Allisons were litigating whether the Schwabs' initial attempts at service on the Allisons were effective. The district court held they were not, but it declined to dismiss the Schwabs' claims against the Allisons and instead allowed the Schwabs additional time to effect service. After

7

they did so, the Allisons moved to dismiss and the Schwabs requested leave to amend in response to that motion. They assert that "there needed to be more clarification on the Allison[s'] involvement." Aplt. Br. at 22. As to the other defendants, they state that they "did not feel the need to modify their complaint" in response to any of the previous eleven motions to dismiss, but they "decided to cure some other deficiencies" after the Allisons moved to dismiss. *Id.* at 21.

Regarding all defendants other than the Allisons, the Schwabs offer no reasoned basis to conclude that the district court abused its discretion in denying leave to amend due to their unexplained delay. The basis for the court's finding of undue delay is less clear, however, with respect to the Schwabs' request for leave to amend their claims against the Allisons. It did not explicitly consider the proceedings regarding service on the Allisons or the relevant—and short—timeframe between service of the complaint, the Allisons' motion to dismiss, and the Schwabs' motion for leave to amend. But we need not decide whether the court abused its discretion in denying the Schwabs leave to amend their claims against the Allisons based upon unexplained delay because we can affirm the district court's ruling on the alternative ground that amendment would be futile. *See Hertz*, 576 F.3d at 1117.[4]

---

[4]Although the Schwabs argued in the district court that amendment would not be futile, *see* R., Vol. II at 376-77, 525, 528-30, the district court did not reach that issue, *see id.* at 574 n.7. But we can affirm on an alternative basis supported by the record. *See Fields v. City of Tulsa*, 753 F.3d 1000, 1013-15 (10th Cir. 2014) (noting court could affirm on any basis supported by the record and holding that amendment of plaintiff's complaint would be futile). Nor will we intrude upon the district court's discretion by doing so because futility of amendment is a legal rather than a discretionary determination. *See Hertz*, 576 F.3d at 1117.

8

### 3.    Futility of Amendment

The Schwabs did not oppose the Allisons' motion to dismiss and instead sought leave to file their proposed amended complaint. We conclude that leave to amend would be futile because the proposed amended complaint did not state a plausible claim for relief against the Allisons.

The Schwabs' proposed amended complaint removed all federal claims against the Allisons and asserted only one state-law claim against them: a "false light" claim under Kansas law.[5] A false light claim is one of four types of invasion of privacy claims in Kansas. *See Dominguez v. Davidson*, 974 P.2d 112, 121 (Kan. 1999). "One who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." *Id.* (alteration and internal quotation marks omitted). The elements of a false light claim are: "(1) publication of some kind must be made to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person." *Id.* (internal quotation marks omitted). In the context of a false light/invasion of privacy claim, "[p]ublicity . . . means that the matter is made public, by communicating it to the

---

[5] The only count explicitly asserted against the Allisons in the Schwabs' proposed amended complaint was Count 4 alleging publicity placing the Schwabs in a false light. Unlike all the other counts, Count 2—alleging claims under §§ 1983 and 1985—did not explicitly state which defendants it was asserted against. But in their reply in support of their motion to amend the Schwabs made clear that their proposed amended complaint "removed Federal Claims against the Allisons." R., Vol. II at 529. We therefore do not construe Count 2 as brought against the Allisons.

9

public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (internal quotation marks omitted). A false light claim fails if "the alleged offensive statements had not become common knowledge in the . . . public arena." *Id.* (affirming summary judgment in the absence of "evidence to show such widespread disclosure of private matters as to constitute publicizing").

In their proposed amended complaint, the Schwabs made collective false light allegations against all nine of the named defendants (plus Does 1-10) against whom they brought that claim. *See* R., Vol. II at 461 (making allegations against "all the individual defendant listed above"). Such collective allegations are insufficient to put the Allisons on notice of the wrongful acts they allegedly committed. *See Robbins*, 519 F.3d at 1250 (holding that collective allegations do not satisfy a plaintiff's "burden . . . to provide fair notice of the grounds for the claims made against each of the defendants").

The Schwabs did also include the following allegations specifically against the Allisons:

> [I]n January of 2016 when journalist David Olinger of the Denver post contacted the Schwab's [sic] after running a story about the Removal of the Schwab children. He informed the Schwab's [sic] that Anthony and Michelle contacted him after publishing the story and told him that the Schwab's [sic] were meth addicts, that they abused and neglected their kids, that the Plaintiff's [sic] were liars and should not be believed. This pattern continued to the Schools, therapist of the children, and email exchanges between the other defendants and the Allisons.

10

R., Vol. II at 461. These allegations fail to state a plausible false light claim because they do not allege that the Allisons' statements to the reporter, *after* a newspaper story had already been published, were ever communicated to the public at large. And communication of (presumably) the same statements to the Schwabs' children's schools, therapist, and other unspecified defendants, all of whom were involved in the CINC proceedings, would not show that "the matter must be regarded as substantially certain to become one of public knowledge." *Dominguez*, 974 P.2d at 121 (internal quotation marks omitted); *see also Werner v. Kliewer*, 710 P.2d 1250, 1256 (Kan. 1985) (holding that communication to persons involved in a divorce proceeding did not constitute "publicity").

Because the Schwabs' proposed amended complaint failed to state a plausible claim against the Allisons, we affirm the district court's denial of leave to amend under Rule 15(a)(2) based on the alternative ground of futility.

## B. Dismissal of Claims

The Schwabs challenge the district court's dismissal of some of their claims against some of the defendants.[6] We review de novo a court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

---

[6] We note that the Schwabs do not challenge the court's dismissal of any of their § 1985 claims based on a failure to allege racial or class-based discriminatory animus.

### 1. Dismissal of § 1983 Claims Against the Allisons

The district court held that the Schwabs failed to state a claim under § 1983 against the Allisons because they did not allege sufficient facts plausibly demonstrating that the Allisons' conduct was "fairly attributable to the State," *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (internal quotation marks omitted). "Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" *Id.* (quoting § 1983). Thus, under the state action doctrine, a proper defendant in a § 1983 action is one who represents the state in some capacity. *Id.* We "apply[] a variety of tests to the facts of each case" to determine "whether particular conduct constitutes state action." *Id.* Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453.

Here, the district court held that complaining to a police officer about a person's conduct does not, without more, constitute state action. *See Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987). The Schwabs argue this holding mischaracterized their claims, which they say were based on a conspiracy between the Allisons, other relatives, and the RCPD to deprive them of lawful control of their children. But the court held their conspiracy allegations were conclusory and insufficient to demonstrate state action where they "pleaded no facts capable of supporting a rational finding that there was a meeting of the minds, the defendants formed an agreement, or that they engaged in a general conspiracy." R., Vol. II at 580; *see Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) ("[W]hen a plaintiff

12

attempts to assert the state action required for a § 1983 claim against private actors based on a conspiracy with government actors, mere conclusory allegations with no supporting factual averments are insufficient." (internal quotation marks omitted)). The Schwabs do not cite to any nonconclusory allegations in their complaint that are sufficient to show agreement and concerted action between the Allisons and any state actor. They therefore fail to demonstrate error in the district court's dismissal of their § 1983 claims against the Allisons based on their failure to sufficiently allege conduct constituting state action.[7]

### 2. Dismissal of § 1983 Claims Against KVC, St. Francis Community Services, Kathy Boyd, Laura Price, and Kaylee Possen

The district court also dismissed the Schwabs' § 1983 claims against private parties KVC, St. Francis Community Services, Kathy Boyd, Laura Price, and Kaylee Possen because the complaint failed to assert nonconclusory allegations of conduct amounting to state action. The Schwabs alleged that St. Francis and KVC are private, nonprofit corporations that were each "awarded a social services contract by DCF to provide similar services that DCF would otherwise provide." R., Vol. I at 39,

---

[7] The Schwabs also contend that, in its First Dismissal Order, the district court omitted certain allegations and mischaracterized others regarding their relatives' report to the RCPD and later events. *See* Aplt. Br. at 29. In ruling on a Rule 12(b)(6) motion, a court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." *Shields*, 744 F.3d at 640 (internal quotation marks omitted). But the Schwabs do not point to any error in the district court's rulings in the First Dismissal Order as a result of such mischaracterization or omission.

40; *see also id.* at 92 (stating that DCF "contracted out core public functions" to these private entities). Boyd, Price, and Possen are employees of St. Francis.

On appeal, the Schwabs argue that these defendants' conduct qualifies as state action under two of the recognized tests. They first invoke the symbiotic relationship test, *see Gallagher*, 49 F.3d at 1451, asserting that St. Francis and KVC "are solely tasked and contracted for providing foster care placement, investigation, and adoption service in place of and in symbiotic relationship with Kansas DCF," Aplt. Br. at 27. Setting aside that no such allegation is found in their complaint, this contention is insufficient to demonstrate state action under the narrowly-applied symbiotic relationship test. *See Gallagher*, 49 F.3d at 1451. Rather, "[t]he [Supreme] Court has held that extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action." *Id.*

Next, contending that these defendants "work[] in place of DCF to provide core foster care services," Aplt. Br. at 28, the Schwabs argue that their alleged conduct qualifies as state action under the public function test, *see Gallagher*, 49 F.3d at 1456. "If the state delegates to a private party a function traditionally exclusively reserved to the State, then the private party is necessarily a state actor." *Id.* (citation and internal quotation marks omitted). But "[t]his test is difficult to satisfy" because "[w]hile many functions have been traditionally performed by

14

governments, very few have been exclusively reserved to the State." *Id.* (internal quotation marks omitted).

In a similar context, we held that neither an adoption service nor adoptive parents were state actors under the public function test. *See Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002). And other courts have held that the care of foster children is also not a power traditionally exclusively reserved to the state. *See, e.g.*, *Leshko v. Servis*, 423 F.3d 337, 343 (3d Cir. 2005) ("No aspect of providing care to foster children in Pennsylvania has ever been the exclusive province of the government."); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (holding that foster care is not traditionally an exclusive state prerogative). The Schwabs do not cite any authority for the proposition that the care of foster children in Kansas is a power traditionally exclusively reserved to the state.

The Schwabs have not demonstrated error in the district court's dismissal of their § 1983 claims against KVC, St. Francis, Boyd, Price, and Possen based on a failure to sufficiently allege conduct constituting state action.

### 3.    Dismissal of § 1983 Claims Against Swartz and Goggins

Swartz and Goggins were the investigating officers with RCPD. The district court dismissed the Schwabs' § 1983 claims against both of these defendants in the 2018 Action. It applied claim preclusion to dismiss the claims against Swartz based

15

upon the judgment entered in the 2016 Action, and it held both defendants were entitled to qualified immunity.[8]

### a.    Swartz

Swartz was a defendant in the 2016 Action.  On several different grounds, the district court dismissed the claims against her under §§ 1983 and 1985 in that previous action for failure to state plausible claims for relief.  It first held that Swartz was entitled to witness immunity against claims based upon her testimony during the CINC proceedings.[9]  The court also held that Swartz was entitled to qualified immunity because the Schwabs' conclusory allegations failed to sufficiently demonstrate a constitutional violation.  It further held that their § 1985 claims failed because the Schwabs did not allege racial or class-based discriminatory animus.  After dismissing all of the federal claims in the 2016 Action, the court declined to exercise supplemental jurisdiction over any state-law claims and entered judgment in the defendants' favor.

The district court also granted Swartz's motion to dismiss in the 2018 Action, holding that the claims against her under § 1983 were barred by claim preclusion.  Claim preclusion applies when there was "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the

---

[8] The Schwabs do not challenge the district court's bases for dismissing their state-law claims against these defendants.

[9] The Schwabs incorrectly assert that witness immunity was the sole basis for dismissal of their federal claims against Swartz in the 2016 Action.

16

cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999). As to the third element, the district court concluded that the claims against Swartz in the 2018 Action arose from the same transaction or series of transactions as the claims against her in the 2016 Action. *See id.* at 1227 (noting "[t]his court has adopted the transactional approach," which "provides that a claim arising out of the same transaction, or series of connected transactions as a previous suit, which concluded in a valid and final judgment, will be precluded" (internal quotation marks omitted)).

The Schwabs argue the district court erred in applying claim preclusion to dismiss their § 1983 claims against Swartz in the 2018 Action because, under *Younger* abstention, they could not bring claims against Swartz until the state proceedings concluded. But in the 2016 Action the district court only abstained from deciding their equitable claims. It dismissed with prejudice their federal claims for money damages. The Schwabs fail to demonstrate error in the district court's holding that the prior judgment in the 2016 Action barred their § 1983 claims against Swartz in the 2018 Action.

### b. Goggins

The district court dismissed the Schwabs' § 1983 claims against Goggins based on qualified immunity because they did not allege facts sufficient to show that

17

she plausibly violated their constitutional rights. *See Robbins*, 519 F.3d at 1248-49.[10]

> The defense of qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 for actions taken while performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.

*Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1314 (10th Cir. 1999) (citation and internal quotation marks omitted). The district court concluded that "[t]he relatively few allegations plaintiffs make against . . . Goggins are either conclusory or too vague to provide [her] with notice of plaintiffs' theory of recovery." R., Vol. II at 238-39.

The Schwabs argue error in this ruling but they do not cite to any allegations in their complaint specifically against Goggins, as required by the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 28(a)(8) (requiring "citations to the . . . parts of the record on which the appellant relies"). And the majority of their argument on qualified immunity addresses the alleged conduct of Swartz rather than Goggins.

We have nonetheless identified the few allegations against Goggins in the Schwabs' complaint. They alleged only that she scheduled an appointment for Anthony Allison to bring the children into the police station without notifying the

---

[10] The Schwabs also assert that the district court dismissed their claims against Goggins based upon claim preclusion. It did not, as Goggins was not a defendant in the 2016 action.

18

Schwabs and without further investigating the report by the Schwabs' maternal relatives that they had abandoned their children while on a drug binge. *See* R., Vol. I at 45-46. The complaint further alleged that the children were seized by the RCPD but without indicating Goggins' role, if any, in that action. *See id.* at 46. The Schwabs fail to demonstrate error in the district court's holding that these allegations were too vague to provide Goggins with notice of their theory of recovery against her. *See Robbins*, 519 F.3d at 1250 (noting "it is particularly important in" § 1983 cases against government actors "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her").

### 4. Dismissal of § 1983 Claims Against Ingles

The district court dismissed the Schwabs' § 1983 claims against Ingles, who was the court appointed guardian ad litem for their children. The court held that Ingles was entitled to immunity for her acts within the core duties of her work in that role. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 630 (10th Cir. 2014) (holding that immunity extends to "acts . . . within the core duties of a [guardian ad litem] in assisting the court—that is, performing a function closely associated with the judicial process" (brackets and internal quotation marks omitted)).

The Schwabs argue error in this ruling. They maintain that Ingles worked outside the scope of her position by engaging in various types of allegedly wrongful conduct as asserted in their complaint, including failing to investigate and provide a

19

report to the court; acting as a fact finder for the court; promoting a narrative she knew or should have known was false; aggressively contacting reporting service providers, demanding confidential information from them, and attempting to bias them against the Schwabs; and presenting the Schwabs in a false light to their counselors.

A guardian ad litem is not immune "for acts taken in the clear absence of all jurisdiction." *Id.* (internal quotation marks omitted). But a guardian ad litem's act does not fall outside her jurisdiction just because it was in error, wrongful, unlawful, done maliciously, or in excess of her authority. *Id.* at 630-31. This is so because "[i]mmunity is conferred so that judicial officers can exercise their judgment (which on occasion may not be very good) without fear of being sued in tort." *Id.* at 631. The Schwabs' allegations of wrongful conduct by Ingles do not demonstrate that she "acted in the clear absence of all jurisdiction." *Id.* (internal quotation marks omitted). They therefore fail to show the district court erred by holding she was entitled to quasi-judicial immunity.

### 5. Dismissal of Individual-Capacity Claims Against Phyllis Gilmore, Angie Suther, Kim Yoxell, Theresa Freed and Kendra Baker

Phyllis Gilmore, Angie Suther, Kim Yoxell, Theresa Freed, and Kendra Baker are employees of DCF (hereafter, the "DCF individuals"). The Schwabs alleged claims against them in both their official and individual capacities. DCF moved to dismiss only the official-capacity claims, noting that the DCF individuals had not been served with the complaint in their individual capacities. In response, the

20

Schwabs purported to "withdraw claims against these defendants[] in their official capacity." R., Vol. I at 522. As to service of their individual-capacity claims, they asked the district court to order DCF's counsel to provide them with the DCF individuals' addresses. Alternatively, they asked the court to dismiss the individual-capacity claims without prejudice.

In the First Dismissal Order, the district court denied the Schwabs' request for an order directing DCF's counsel to provide the DCF individuals' addresses. But the court exercised its discretion to extend the time for service and warned that the individual-capacity claims against the DCF individuals would likely be dismissed if the Schwabs did not complete service within 30 days. Six months later, when the Schwabs still had not served the DCF individuals, the court dismissed the individual-capacity claims against them without prejudice based on the Schwabs' failure to prosecute.

On appeal, the Schwabs assert that the district court "knew, or should have known," Aplt. Br. at 35, that they had substantially complied with the statutory service requirements by serving the DCF individuals in their official capacities, and in any event, that service was effective because it resulted in the DCF individuals having actual notice of the case. They therefore contend that the district court erred in dismissing their individual-capacity claims against these defendants.

But the Schwabs did not argue in response to DCF's motion to dismiss that service upon the DCF individuals had already been satisfied; they instead asked for the defendants' addresses and more time to serve them. Nor do the Schwabs indicate

21

where this issue was otherwise raised and ruled on in the district court, as required by Tenth Circuit Rule 28.1(A) ("For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on.").  Because the Schwabs fail to argue for plain error review, we do not address their argument for reversal raised for the first time on appeal.  *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011).

### 6. District Court's Decision Not to Exercise Supplemental Jurisdiction Over Remaining State-Law Claims

In the First Dismissal Order, the district court rejected the Schwabs' contention that it had subject matter jurisdiction over their state-law claims under 28 U.S.C. § 1332 based upon diversity of citizenship.  It held that their complaint did not satisfy the "matter in controversy" requirement because they failed to allege facts establishing that all defendants were jointly liable for the aggregate damages they alleged in excess of $75,000.  *See Alberty v. W. Sur. Co.*, 249 F.2d 537, 538 (10th Cir. 1957).  Then, after dismissing all of the federal claims in the Second Dismissal Order, the court declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed those claims without prejudice.[11]

On appeal, the Schwabs do not reassert their contention that their complaint was sufficient to invoke jurisdiction under § 1332.  They claim instead that their proposed amended complaint would cure the defect identified by the district court.

---

[11] At that time, there were state-law claims remaining against Boyd, Price, Possen, Ingles, KVC, St. Francis, Pawnee Mental Health Services, the Allisons, and Does 1-10.  *See* R., Vol. II at 584.

22

Because we affirm the district court's denial of leave to file the proposed amended complaint, as well as its dismissal of all of the federal claims in the Schwabs' complaint, we likewise affirm the court's decision not to exercise supplemental jurisdiction over their remaining state-law claims.

## III.   Conclusion

The district court's judgment is affirmed.

Entered for the Court

Bobby R. Baldock
Circuit Judge

23